HARDY, Judge.
This action, via executiva, was instituted by plaintiff, Douglas M. Tracy, on March 6, 1956, for the foreclosure of a second mortgage, executed by defendant, Robert Hewitt, securing the payment of a note in the principal sum of $1,400, of which note plaintiff was the holder and owner in due course for a valuable consideration before maturity. On March 15, 1956, B. F. Eding-ton Drilling Company filed a petition of intervention and third opposition, alleging *758 that it was entitled to a mechanic’s lien and privilege on the property sought to be foreclosed, superior to any mortgages on the property, and seeking the recovery of the principal sum of $500 with interest, costs, charges, etc. Opponent sought and obtained an order from the judge of the district court commanding the sheriff to retain in his hands, subject .to further orders of the court, all proceeds of the sale of the property on which opponent claimed a lien and privilege superior to that of plaintiff. In due course the property was sold by the sheriff of Caddo Parish without appraisement to the plaintiff for the sum of $1,400. The case was submitted, all facts involved being admitted by stipulation. There was judgment rejecting the claims and demands of intervenor but reserving any rights which might be asserted in appropriate proceedings against either the plaintiff or defendant in this case. From this judgment intervenor has appealed.
On September 16, 1955, the defendant, Robert Hewitt, executed two special mortgages on a certain described lot of land in Caddo Parish, Louisiana. One of the encumbrances was designated as a first mortgage and was given in favor of Barrow, Leary & Company of Shreveport, in the principal sum of $2,200. The second mortgage, in the principal sum of $1,400, is the instrument which is sought to be enforced by plaintiff in this proceeding. Plaintiff’s action is subject to the first mortgage.
On October 2, 1955, B. F. Edington Drilling Company entered into a contract with this defendant, Robert Hewitt, owner of the property, to drill and equip a water well on the property for an agreed price of $500. Pursuant to this agreement the well was drilled to a depth of 166 feet, six and one-fourth inches in diameter, and 118 feet of three-inch galvanized casing was set and cemented. A pump and tank were installed. Upon Hewitt’s failure to make payment in accordance with the contract, intervenor timely filed and recorded a mechanic’s lien and privilege, which is urged by the intervenor in this proceeding, under the provisions of LSA-R.S. 9:4861 et seq., as being superior in rank to the mortgages described.
Intervenor contends that its mechanic’s lien, under the statute, is superior in rank to plaintiff’s mortgage, as well as the first mortgage, and that such lien and privilege covers and applies to the property described, together with all improvements thereon, that is, to the fee title.
The learned judge of the district court held that intervenor’s lien, while superior in rank to plaintiff’s mortgage, did not apply to the fee title of the property on which the water well was drilled. The judge further held that intervenor’s lien had been lost or extinguished by reason of the sale, without appraisement, under the foreclosure. In other words, the effect of the judgment was that intervenor lost the benefits of its lien and privilege by reason of its failure to procure the separate ap-praisement and sale of the well and equipment, upon which the privilege might thereby have been preserved.
Briefly stated, the opposed contentions of the parties involve a determination of the question as to whether the lien and privilege granted under the provisions of LSA-R.S. 9:4861 et seq., applies exclusively to a lease, and the improvements placed on such lease, or extends to the property and improvements even in the absence of a lease. The question is res nova in our jurisprudence.
As a point of departure for our consideration of the issue presented, it must be observed that liens, being in derogation of common rights, are stricti juris and are not subject to extension by way of implication or interpretation to any situations which are not plainly and definitely contemplated by the statute creating the right which is sought to be enforced. This principle is too well established and accepted to necessitate elaborate citation. It was *759 clearly enunciated by this court in Willis v. Mills Tooke Properties, 42 So.2d 548. As was stated by our brethren of the First Circuit in Franklin Life Ins. Co. v. Hill, 61 So.2d 602, the principle is fundamental in our law and has been recognized and enforced by our courts.
The statute in question, as set forth in LSA-R.S. 9:4861, reads as follows:
“§ 4861. Privilege for labor, services, or supplies
“Any person zvho performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas, or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas, or water well or wells, has a privilege on the oil produced from the well or wells and stored on the lease whereon the well or wells are located, and on the oil, gas, or water zvell or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney’s fees in the event it becomes necessary to employ an attorney to enforce collection. Any person who does any trucking, towing, or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, material, or supplies for or in connection with the drilling of any well or wells in search of oil, gas, or water, or for or in connection with the operation of any oil, gas, or water well or wells, has a privilege on the oil, and on the oil, gas, or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached for drilling, equipment, and operation of the well or lease, for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, material, or supplies, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney’s fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank to the privilege granted in favor of laborers.” (Emphasis supplied.)
We think the provisions of the statute are clear and unambiguous. The lien and privilege created thereby, as noted in the portions which we have above emphasized, applies (1) to the oil produced and stored on the lease; (2) the wells and the lease upon which the wells are located; (3) all rigs, machinery, equipment, etc., and structures attached to or located on the lease.
Under the compulsion of strict interpretation we think there is no possible question as to the correctness of the conclusion that the lien and privilege created by the statute is restricted to a lease on property. No reasonable interpretation of this statute could justify the extension of the privilege to the fee title of property and the improvements thereon.
As was appropriately concluded by the district judge in his opinion, where there is no lease there is no lien.
We think the second question which is presented by this appeal has been resolved by existing jurisprudence. Inter-venor, having failed to provide for separate appraisement and sale of the well and equipment, has lost his privilege; Sundberry v. Bertie Sugar Co., 145 La. 700, 82 So. 857, 861, in which the court declared:
“If, however, there be no separate appraisement of the thing (say, a cabin, on a plantation), and of the rest of *760 the immovable in which it is incorporated, and the whole is sold, in globo, for a single price, in the enforcement of a mortgage which covers the whole, there is no basis for the ascertainment of the proportion of the single price that should be attributed to the thing upon which, and which alone, the privilege rests.”
It is urgently argued by counsel for intervenor that a mechanic’s lien must be discharged in full before validity attaches to a sheriff’s sale under foreclosure, and that no separate appraisement is necessary. In support of this conclusion counsel relies upon the holding of the Supreme Court in Mercantile National Bank of Dallas v. J. Thos. Driscoll, Inc., 194 La. 935, 195 So. 497. We do not regard the cited case as authority for the conclusion urged. The effect of the holding of the court was to declare the validity and right to enforcement of a single lien against a number of leases. It is clear from the facts in the Driscoll case that all the leases were owned by the same party who purchased all the materials and supplies under one account. Under these facts the holding of the court that a separate appraisement was not necessary is clearly inapplicable under the facts of the instant case, where no lease exists. We do not regard the holding of the Dris-coll case as having any adverse effect upon the clearly enunciated principle set forth in the Sundberry case.
By supplemental brief filed in this court counsel for plaintiff additionally urges that the statute which is here under consideration is further restricted in its application to water wells drilled in connection with oil and gas operations. While we do not dismiss this contention as being without merit, we think it unnecessary to encumber this opinion by a consideration of an issue which is unnecessary to a detercmination of judgment on this appeal.
For the reasons assigned the judgment appealed from is- affirmed at appellant’s cost.