FOURNET, Chief Justice.
The plaintiff, Dudley T. Odom, as holder and owner of six certain promissory notes executed by the defendant Cherokee Homes, Inc., filed the instant proceeding to foreclose via executiva six separate mortgages, each securing one of the notes; and pursuant to an order of seizure and sale the Sheriff of Jefferson Parish seized 113 lots in a development known as Cherokee Courts Subdivision in Jefferson Parish. While no single one of the mortgages bears against all of the property seized, collectively they represent liens against either large parcels, or against individual lots, and in some instances there are as many as three mortgages on certain lots. Interventions were filed by owners of other notes secured by mortgages bearing on certain lots among those seized; plaintiff then supplemented his petition for foreclosure so as to include an additional first mortgage held by him on a portion of the seized property. To the interventions, plaintiff in seizure pleaded *56 exceptions of no cause and/or no right of action, which exceptions were maintained by the Trial Court with reservation of rights of intervenors to assert their privilege on the distribution of the surplus, if any, of the proceeds of the sale. The Court of Appeal, Fourth Circuit, having denied writs, the case is here on certiorari, with stay order, granted on intervenors’ application, to review the judgment of the Trial Court.
Cherokee Courts Subdivision, according to a survey plat — sketch of which is reproduced herewith, showing partial detail for purposes of clarity — was formed by subdividing three major tracts of land designated as Parcel “A”, Parcel “B” and Parcel “C” on the plat, acquired on credit terms by the defendant at various times, into 141 separate building sites. Of the original sites, 28 were sold and the remaining 113 are those seized to satisfy plaintiff’s mortgages.

*57 The indebtedness on which the instant suit is founded, according to the petition, amended petition, and exhibits attached, is:
a. Note for $115,000.00, dated October 31, 1958, secured by-vendor’s lien and mortgage affecting Parcel B; remainder due _$109,000.00
b. Three notes for $17,127.50 each, dated January 5, 1959, secured by vendor’s lien and mortgage affecting Parcel C; remainder due-$ 43,773.98
c. Note for $120,000.00, dated March 24,-1959, amount still due _$120,000.00
Secured by pledge of four mortgage notes given to secure:
(1) $100,000.00 “Collateral Mortgage” dated October 31, 1958 on described lands within Parcels A and B;
(2) $48,000.00 “Collateral Second Mortgage” dated December 1, 1958 on forty specific lots in Parcels A and B;
(3) $4,000.00 “Collateral Mortgage” dated December 1, 1958, affecting a strip 50' x 137', as described;
(4) $70,000.00 “Collateral Second Mortgage” dated January 5, 1959 on Parcel B.
d. Note for $150,000.00 dated March 24, 1959, secured by “Collateral Third Mortgage and Subordination Mortgage” affecting one hundred and one specific lots situated in Parcels B and C; remainder due-$130,750.00
Plaintiff therefore allegedly holds first mortgages in the form of vendor’s liens on Parcel B (“a” above) and Parcel C (“b” above), four collateral mortgages on lands in Parcels A and B securing one debt of $120,000 in principal (“c” above), and a mortgage on certain specific lots which originally totaled 101, in Parcels B and C (“d” above). The 113 lots seized were all the unsold building sites in Parcels A, B and C; the total amount allegedly due plaintiff, including interest and attorneys’ fees, is approximately a half million dollars.[1]
Prior to the advertisement of the property for sale, interventions were filed by James D. Tillman, III, by E. O. Cresap, Sr., by Helmet Sales Agency, Inc. jointly with Claude E. Meyer, and a fourth which was subsequently dismissed as of non-suit without prejudice. Intervenor Tillman, as owner of two notes for $27,000 and $9,000 respectively, identified with acts of mortgage on twenty-four specific lots in Parcel A and Parcel B (indicated on the sketch by outline and cross marks), alleged that only plaintiff’s vendor’s lien on Parcel B is superior to his mortgages for the reasons that (a) the $150,000 mortgage does not cover his lots, (b) plaintiff’s collateral mortgages which do cover his lots (i. e., those for $100,000 and $48,000, pledged to secure payment of the $120,000 debt) are inferior *58 to Intervenor Tillman’s by operation of law since the debt which they had been pledged to secure was paid on March 24, 1959, at which time Tillman’s mortgages, dated December 4, 1958, were of record, and the same mortgage notes were then reissued by defendant on said March 24, 1959 to plaintiff in pledge as security for the $120,000 loan; and (c) his mortgages on the three and a fraction lots in Parcel A are superior in rank to any held by plaintiff on those lots. Intervenor Cresap, who holds two notes, each for $12,600, one dated December 18, 1958 and the other January 7, 1959, secured by mortgages on four lots, two in Parcel B, one in Parcel A, and one partly in A and partly in B (these four are included in Tillman’s twenty-four lots), also alleged that only plaintiff’s vendor’s lien on Parcel B primes his mortgages because of various reasons, including some advanced by Tillman. Intervenors Meyer and Helmet Sales Agency, alleging that they hold mortgages securing two notes for $12,500, one dated June 18, 1959 and the other June 29, 1959, with amount still due of $16,550, bearing on twenty lots, two of which are in Parcel A and eighteen in Parcel B (likewise included in the twenty-four covered by the Tillman intervention), admit that with respect to specific lots their mortgages are inferior to certain mortgages of plaintiff, but rely on an agreement of March 24, 1959, to which plaintiff, defendant, Tillman, and others were' parties, to show that the $120,000 debt, which plaintiff alleges to be due in its entirety, should have been reduced by some $10,000, but that plaintiff has arbitrarily applied those payments in reduction of another debt owing him by defendant, to intervenors’ prejudice. (Tillman also makes this complaint, in the alternative to his principal contention.) They state further that in each instance where plaintiff’s mortgages are superior in rank to theirs, such mortgages also cover other property seized herein.
In summary, the several intervenors in support of their respective claims sought to have plaintiff show cause why the property covered by their mortgages should not be sold separately from and after the remaining property seized by plaintiff; why lots in Parcel A affected by intervenors’ mortgages should not be sold free and clear of the vendor’s lien and mortgage on Parcel B; why Parcel C should not be sold first in order to fix the balance due on the collateral mortgages held by plaintiff on Parcels A and B; why the plaintiff should not be required to make proper application of credits of payments made by defendant; and why the indebtedness to intervenors should not be paid from any excess of proceeds from the separate sale of lots, after sales of other property seized on mortgages superior in rank to theirs, in preference and priority over any other debts owing to plaintiff. Following a hearing on the Rule, the Trial Court maintained plaintiff’s exceptions to the petitions of intervention, reserving to intervenors their right to participate in the surplus, if any, according to the rank of their respective claims, as stated above.
Counsel for intervenors complain that the ruling of the Trial Court has the effect of permitting plaintiff to satisfy his inferior mortgages bearing on other property from proceeds of the sale of the property covered by their mortgages; that the Court below erred in ruling that Article 1092, Code of Civil Procedure,[2] which expressly permits *59 a separate appraisement and sale of the portion of the seized property on which an intervenor claims a mortgage, does not apply to sales in executory proceedings, and in ruling that under the provisions of Article 2643 of the said Code,[3] which specifically deals with a third person’s claim on property seized in an executory proceeding, a separate sale is not authorized under the circumstances of, this case; counsel say that in so ruling the Trial Judge ignored the substantive law of this State whereby those asserting a claim on a specific portion of the seized property are entitled to establish and identify the fund representing the surplus after satisfaction of superior claims, and contend that under our jurisprudence, if intervenors permit property subject to their claims to be sold confusedly with the mass of other property without the identity of a surplus fund being maintained, their claims for preference payment are lost. Among the cases relied on to support this proposition are Caldwell v. Laurel Grove Co., 179 La. 53, 153 So. 17; In re J. D. Connell Iron Works Co., 138 La. 702, 70 So. 617; Baton Rouge Rice Mill, Inc. v. Fairbanks, Morse & Co., Inc., 164 La. 729, 114 So. 633; Reusch & Co. v. Keenan & Slawson, 42 La. Ann. 419, 7 So. 589; and Tracy v. Hewitt, La.App. 2 Cir., 92 So.2d 757.
Plaintiff, on the other hand, denies that the above rule and the cited jurisprudence are applicable in the instant matter; those cases, say counsel, deal with particular claims or privileges which were superior, as to a parcel of the property seized, to the claim of the seizing creditor, whereas in the instant matter the claims of inter-venors are admittedly inferior to those of plaintiff;[4] that the jurisprudence of this State does not give to an inferior mortgage creditor a right of separate appraisal and sale in foreclosure proceedings, but gives such right only where the claimant or intervenor has a superior claim or where he asserts ownership to part of the property, or has a privilege or separate lien on a particular parcel of the whole property seized; counsel say that an intervenor with an inferior claim, by the provisions of the second paragraph of Article 2643, Code of Civil Procedure,[5] must look to the surplus after the plaintiff’s claim has been paid in full, whereas one with a superior claim is, by the first paragraph of the same article, referred to the benefits of Article 1092 [6] permitting separate appraisal and sale; and that the two articles are therefore in perfect harmony. Counsel submits that it has never been the law that an inferior mortgage creditor has a right to compel a superior mortgage creditor to have separate appraisal and sale; and as an example of the absurd consequences which might result from that rule, the simple case is supposed of a homestead association foreclosing its first mortgage and vendor’s lien on a tract composed of a hundred lots, being required by holders *60 of second mortgage notes executed by the owners of the various lots to conduct a separate appraisement and sale of each lot in the tract. It is submitted that these intervenors are actually seeking a ranking of their claims, and the proper method of ranking claims is after the sale, when claims are referred to the proceeds for proper distribution.
We readily agree with counsel for plaintiff in their exposition of the harmonious application of Articles 2643 and 1092, Code of Civil Procedure; we are also in accord with their conclusion that in the simple hypothetical case presented, no separate appraisal and sale of each lot could be demanded by the holders of second mortgages thereon; but that supposed situation finds no parallel in the instant case. The plaintiff here, in one executory proceeding, has gathered an assortment of claims as to which almost the only characteristic in common is that they may be said to affect some part or other of lands formerly composing three separate tracts and now lying within a specific development, and he is attempting to satisfy all of his claims indiscriminately out of the proceeds of the sale. Thus it is seen that he seeks to foreclose a vendor’s lien and mortgage, with remainder due of $109,000, on Parcel B; to foreclose another vendor’s lien and mortgage, with remainder due of $43,773.98, on Parcel C; to collect a note for $120,000, with no credits thereon, payment of which is secured by pledge of four mortgage notes identified with mortgages of undetermined rank, some of which bear on parcels as a whole while others affect specific lots or a strip of land in one or more parcels; and to foreclose a “Collateral Third Mortgage” on which there is a remainder due of $130,750 bearing on 101 specific lots in Parcels B and C; with prayer that, from the proceeds of the sale of the whole property seized, i. e., all unsold lots in the subdivision, he be paid by preference and priority the above amounts, with interest from various dates until paid, plus attorneys’ fees, etc.
It is obvious that the net result would be the impossibility of determining how much was realized on the separate mortgages; the total amount received would be applied to cancellation of the various claims without regard to how much each encumbered unit brought. For example, if the two vendor’s liens were foreclosed in one suit, and Parcel B were to induce a higher bid than the vendor’s lien and mortgage bearing against it, the excess would be applied to liquidation of the indebtedness on Parcel C, in violation of the rights of holders of second mortgages on Parcel B.[7] Clearly, therefore, the intervenors have a cause and a right of action.
*61 The note for $120,000, representing a loan for that amount, finds no place in the instant suit; plaintiff can only collect on the four mortgages securing the respective notes pledged for repayment of the loan, according to their rank. And with respect to the last item, secured by “Collateral Third Mortgage” affecting 101 specific lots, in that foreclosure the Intervenors might avail themselves of the benefits of the first paragraph of Article 2643 of the Code of Civil Procedure if they have mortgages “superior to that of the plaintiff.”
In a supplemental brief filed by the plaintiff, reference is made to a duly recorded Act of Dedication dated September 16, 1959, by the owners of the property (Cherokee Homes, Inc.) to the Parish of Jefferson, to which is annexed a plan of the subdivision, showing 141 lots in seven groupings or sections. Counsel represent that all notes affecting the property — not only the vendor’s lien notes and second mortgage notes, but notes held by these identical intervenors as well — were par-aphed to identify them with this Act of Dedication; and counsel contend that as a consequence, Parcels A, B and C have now lost their identity with respect to the subdivision, that some lots now lie partly in two parcels, and it would therefore be highly impracticable to have separate sales for the three parcels involved. With such developments we are not concerned. The plaintiff holds, and seeks to foreclose upon, various mortgages, each covering certain described property, and his rights are necessarily determined by the recitation of the particular instrument on which his claim is based.
For the reasons assigned, the judgment of the District Court maintaining exceptions of no cause and no right of action to the petitions of intervention filed by E. O. Cresap, Sr., Helmet Sales, Inc. and Claude E. Meyer, and J. D. Tillman, III, is reversed and set aside, the exceptions are overruled and the case is remanded to the Trial Court for further proceedings in accordance with law and consistent with the views herein expressed; costs in this Court to be borne by plaintiff, Dudley T. Odom.
HAWTHORNE, J., does not participate.

. After the seizure by the Sheriff in these proceedings the defendant applied to the U. S. District Court for the Eastern District of Louisiana under provisions of the Federal Bankruptcy Act; the District Judge having concluded that a plan of reorganization could not be had, he referred the matter to the Referee in Bankruptcy; the Referee disclaimed the property and allowed plaintiff to proceed with the foreclosure.

. Article 1092, in a section of the Code treating of intervention in ordinary proceedings, declares: “A third person claiming ownership of, or a mortgage or privilege on, property seized may assert his claim by intervention. If the third person asserts ownership of the "seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant Mm injunctive relief to prevent such sale before adjudication of his claim of ownership.
“If the third person claims a mortgage or privilege on the property seized, the intervention may be filed at any time prior to the distribution by the sheriff of the proceeds of the sale of the seized property, and the court may order the *59 sheriff to hold such proceeds subject to its further orders; and when filed prior to the judicial sale, the court may further order the separate appraisement and sale of the property on which the in-tervener claims a mortgage or privilege.***"

.Article 2643, under a title of Book V dealing with Executory Proceedings, states: “A third person claiming a mortgage or privilege on the property seized in an executory proceeding, superi- or to that of the plaintiff, may assert a preference in the distribution of the proceeds of the sale of the property by intervening, as provided in Article 1092.
“A third person claiming a mortgage or privilege on the property seized in an executory proceeding, inferior to that of the plaintiff, similarly may assert by intervention a preference in the distribution of the surplus of the proceeds of the sale of the property remaining after the claim of the plaintiff has been paid in full. * * * ”

. Counsel say that besides the vendor’s liens and mortgages on Parcels B and C asserted herein, plaintiff also holds a vendor’s lien and mortgage on the lots of Parcel A on which intervenors hold mortgages, although it was not foreclosed upon in this proceeding.

. See note 3, supra.

. See note 2, supra.

. Of. Succession of Anger, 18S4, 36 La. Ann. 252. The facts in that case were that the Succession owned two plantations, “Forlorn Hope” and “Hermitage,” which were subject to the same first mortgage, held by one Graves; second mortgages on Forlorn Hope were held by various persons, while a second mortgage on Hermitage was held by opponent, Richard Humble, tutor to certain minors. The executrix obtained an order for the sale of both plantations to pay debts, but because of an adverse claim of half ownership in Forlorn Hope, asserted by suit, its sale was stayed, while Hermitage was sold. Mortgage creditors of Forlorn Hope, including Graves, bound themselves to stay proceedings for its foreclosure until a later date provided the proceeds of the sale of Hermitage, after satisfaction of prior privileges, should be applied to the reduction of the Graves first mortgage, and the executrix, in filing her account, followed that plan. Upon opposition by Humble that Forlorn Hope, which was equally bound, had contributed nothing, yet upon its eventual sale would' bring much more than sufficient to satisfy the small remainder due Graves and was therefore likely to yield a dividend to its second mortgages, it was held that the second mortgagees on the immovable not sold could not be benefited to the prejudice of those holding second mortgages on the immovable sold by the distribution of the entire price of the one sold to the extinguishment of the first mortgage on both plantations — because to do otherwise would be to perpetrate a gross injustice.