**OGDEN OIL COMPANY**

v.

**SERVCO, A DIVISION OF SMITH INTERNATIONAL, INC.**

**Civ. A. No. 83–1145–A.**

United States District Court,
M.D. Louisiana.

June 4, 1985.

Deborah C. Parker, Baton Rouge, La., for plaintiff.

M. Lizabeth Talbott, New Orleans, La., for defendant.

JOHN V. PARKER, Chief Judge.

This diversity case presents difficult, res nova issues involving the Louisiana Oil Well Lien Act, L.S.A.–R.S. 9:4861 et seq. Defendant has moved for summary judgment; both sides have submitted multiple briefs and the issues have been orally argued. The court apologizes to counsel and litigants for the length of time involved in coming forward with this opinion but, as noted, the issues are difficult and a searching examination of all Louisiana jurisprudence has been undertaken. The ultimate question to be resolved is which of two innocent creditors of the defaulting mineral lessee should suffer.

Both sides agree that the facts are undisputed. Plaintiff, Ogden Oil Company, is a corporate citizen of Mississippi with its principal office in that state and defendant, Servco, a division of Smith International, Inc., is a corporate citizen of California with its principal office in that state. In 1977 Shell Oil Company obtained an oil, gas and mineral lease on a tract of land in sections 49, 50 and 57 (the Comite Field) in East Baton Rouge Parish, Louisiana, and 1982 Shell assigned the lease to Workover One, Inc., which secured a state permit to drill for minerals at a well site commonly identified as the Petit No. 1. On October 8, 1982, Workover One assigned all of its right, title and interest in the lease to Workover One Alliance Group, a partnership. During the period of November and December, 1982, the defendant, Servco, furnished oil field drilling related equipment, supplies, labor and other services to Workover One totaling $145,476.54. Workover One having failed to pay, Servco ceased furnishing such supplies and equipment and on April 7, 1983, more than ninety days following the last performance of labor or services, Servco recorded a lien affidavit in the mortgage records of the Parish of East Baton Rouge.

In the meantime, Workover One contracted with plaintiff, Ogden Oil, to furnish a workover rig for use at Petit No. 1. Ogden's rig was apparently moved to the well site in mid-March, 1983 and on April 4, 1983, after Workover One had failed to pay Ogden some $250,000.00 representing labor, services, supplies and equipment furnished, Ogden began to rig down for removal of its equipment. On May 16, 1982, after Ogden's equipment had been removed from the well site, Servco secured a writ of sequestration from this court authorizing seizure of Ogden's workover rig. The sequestration was subsequently released and Ogden brought this action against Servco alleging wrongful seizure of the rig and claiming some $130,000.00 as damages for the period during which the rig remained under seizure.

The issue presented by Servco's motion for summary judgment is whether Ogden's workover rig was subject to the lien or privilege granted to Servco by the Oil Well Lien Act. If the property was subject to the lien then obviously the seizure was lawful and Servco is entitled to summary judgment. Servco argues that Ogden's

workover rig was "located on the lease" and thus is subject to its privilege; Ogden argues that its rig was not "located on the lease" at anytime that Servco was furnishing labor, materials or services and that the rig is not subject to the privilege.

Since La.R.S. 9:4861.2 provides that it is unlawful for any person to remove property to which a privilege under § 4861 has attached and further provides that the privilege may nevertheless be enforced against any property which has been removed from the site "wherever the same may be located," it is apparent that Ogden's removal of the rig did not defeat the privilege, assuming that it had lawfully attached.[1] The privilege is created by La.R.S. 9:4861 which, prior to its amendment by Act 949 of 1984,[2] read as follows:

§ 4861. Privilege for labor, services or supplies. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege on all oil or gas produced from the well or wells, and the proceeds there of inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection. Any person who does trucking, towing, or barging, or who makes any repairs or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for

or in connection with the drilling of any well or wells in search of oil, gas or water, and for or in connection with the operation of any oil, gas, or water well or wells, whether or not a producing well is obtained and whether or not such materials, machinery, equipment, services and supplies are not incorporated in or become a part of the completed oil, gas or water well, has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached for drilling, equipment and operation of the well or lease, for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank only to the privilege granted in favor of laborers.

Thus, the statute grants a lien or privilege to any person who performs labor or services and to any person who furnishes trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies, and the privilege extends to "all oil or gas produced from the well or wells ... and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached for drilling, equipment and operation of the well or lease." Since Ogden

---

1. Section 4861.2 prohibiting removal and providing for enforcement of the privilege after removal, was added by Act 100 of 1956 which legislatively overruled the case of *Idom v. Moss,* 32 So.2d 411 (La.App.2d Cir.1947).

2. The 1984 amendment extended the privilege to flow lines or gathering lines attached to the well and any pipeline owned by the producer, operator or contract operator.

Oil's workover rig was "thereto attached" to the Petit No. 1 drill site for drilling the well, Servco claims its privilege attached to the rig even though Servco had ceased furnishing materials and supplies more than three months before Ogden Oil moved its rig onto the site. Ogden Oil argues that the statute should be strictly construed so as to limit the privilege to equipment and machinery on the lease *at the time that the services are performed.*

Louisiana jurisprudence is of little assistance and in this diversity action the court must construe and apply Louisiana law as best it can, predicting how a Louisiana court would resolve the issue. *Commonwealth Life Insurance Co. v. Neal,* 521 F.Supp. 812 (M.D.La.1981), aff'd 669 F.2d 300 (5th Cir.1982).

Both sides agree that as to movable property the privilege authorized by § 4861 becomes effective and attaches without recordation. See Section 19, Article 19, Louisiana Constitution of 1921, continued as a statute by Section 16, Article 14, Louisiana Constitution of 1974. See also *Continental Casualty Co. v. Associated Pipe and Supply Co.,* 447 F.2d 1041 (5th Cir.1971). Thus, the provision of Section 4862 that, "If a notice of such claim or privilege ... is filed for record and inscribed ... within ninety days ..." (increased to 180 days by Act 374 of 1983) means that such recordation or registration effects only *the ranking,* not the existence of the privilege. "The clear implication is that if you chose not to record you will lose that special ranking of your privilege but not the lien." *Continental Casualty Co. v. Associated Pipe and Supply Co.,* 310 F.Supp. 1207, 1218 (E.D.La.1969), aff'd 447 F.2d 1041 (5th Cir.1971). See also *Altom v. Mt. Vernon Oil and Gas Co.,* 174 La. 775, 141 So. 457, 460 (1932) which considered a predecessor oil well lien statute (Act 171 of 1928), "[T]he registry of the claim is not intended as prima facie proof of its amount, but only to give the lien precedence over any subsequent mortgage or lien on the property," and *Beacon Gasoline Co. v. Sun Oil Co.,* 455 F.Supp. 506, 509 (W.D.La.1978), "[R]ecordation within 90 days of comple-

tion of services is not necessary to preserve the privilege against third persons." But Cf. *Mercantile Nat'l Bank v. J. Thos. Driscoll, Inc.,* 194 La. 935, 195 So. 497 (1940) and *Western Wireline Services, Inc. v. Pecos Western Corp.,* 377 So.2d 892 (La.App. 4th Cir.1979) holding that registration is required in order for the privilege to effect immovable property. Since no immovable property is involved in this litigation and no lien or privilege except Servco's has been asserted in this litigation, we have no ranking issue and Servco's failure to register its claim within the ninety day period prescribed by Section 4862 is of no significance in determining whether the privilege attaches to Ogden Oil's workover rig.

Although no Louisiana court has addressed the precise issue before this court, the Louisiana jurisprudence has clearly established that (1) the lease on which the well is located defines the area subject to the privilege, *P.H.A.C. Services, Inc. v. Seaways International, Inc.,* 393 So.2d 117 (La.App. 1st Cir.1980) aff'd 403 So.2d 1199 (La.1981). See also, *J.S. Abercrombie Co. v. Lehulu Oil Co.,* 181 La. 644, 160 So. 126 (1935) where the privilege was restricted to a sublease; (2) the privilege does not attach to the landowner's property, *Tracy v. Hewitt,* 92 So.2d 757 (La.App.2d Cir.1957); *Odom v. McClanahan,* 196 So. 382 (La.App.2d Cir.1940); (3) the privilege attaches to all property listed in the statute, regardless of ownership of the property, *Blankenship v. Stovall,* 159 So. 477 (La.App.2d Cir.1935); and (4) the statute "does not require a contract or any contractual relationship between the furnisher of the materials and the owner, operator, producer or driller of the oil well." *Oil Well Supply Co. v. Independent Oil Co.,* 219 La. 936, 54 So.2d 330, 331 (1951). See also, *Sklar v. Oil Incomes, Inc.,* 133 F.2d 512 (5th Cir.1943) and *JHJ Limited 1 v. Chevron U.S.A., Inc.,* 580 F.Supp. 6 (M.D.La.1983).

Ogden Oil argues that, considering Louisiana's uniform jurisprudence to the effect that lien statutes should be strictly construed by the courts and may not be extended by implication or analogy to any

situation not explicitly contemplated by the statute creating them, see e.g., *Southern Savings Association v. Langford Land Company*, 372 So.2d 713 (La.App. 4th Cir. 1979) writ denied 374 So.2d 659 (La.1979), this court should not construe the statute to apply prospectively to rigs and other equipment brought to the lease site after the claimant has ceased furnishing labor, supplies, materials, equipment and machinery.

The answer to that argument is that the statute itself extends the privilege to "all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interests therein," although § 4861.1 protects a purchaser of oil or gas or the proceeds thereof in the absence of written notice of a claim having been delivered to the purchaser. Thus, it is plain that the statute itself extends prospectively since production is normally the end of the drilling process. The statute also extends to all "machinery, equipment, material or supplies" in connection with the drilling of any well "or in connection with the *operation* of any oil, gas or water well." Adoption of the construction advocated by Ogden Oil would result in very difficult application of the statute, since each claimant would be required to establish that he furnished labor services, supplies, materials or equipment at a time when the particular property against which the claim is made was located upon the site—a task well-nigh impossible in many instances.

In *Mercantile Nat. Bank v. J. Thos. Driscoll Inc.*, supra, the Supreme Court held that one lien filed by a supplier on one open account for materials and supplies furnished to multiple wells on seven different leases was sufficient and that the supplier "was not obliged ... to file separate liens for the respective amounts claimed against each well under each lease." *id.* 195 So. at 503. This liberal, non-technical construction of the statute does not favor the narrow interpretation advanced by Ogden Oil. Although the Oil Well Lien Statute is not a model of clarity, it seems plain that the legislature intended no artificial barriers to be interposed and that all property and equipment used in the drilling or opera-

tion of any well would be subject to the privilege in favor of those who furnished labor, materials, supplies or equipment. Had the legislature intended to restrict the application of the privilege solely to machinery and equipment located on the lease at the time supplies, materials, etc. were furnished, it could have easily said so and the broad, all encompassing language used in the statute clearly indicates a contrary intent.

■ Accordingly, I conclude that Ogden Oil Co. having already suffered because Workover One failed to pay it for use and operation of its workover rig, must now also suffer because of the attachment of Servco's lien for labor, services, materials and supplies furnished prior to the time that Ogden Oil Company's rig was placed upon the lease. Since § 4866 specifically grants the right to enforce any privilege arising under § 4861 by writ of sequestration without the necessity of furnishing security therefor, it is apparent that Servco did not wrongfully sequester the Ogden Oil workover rig.

Since there are no disputed issues of material fact and, under Louisiana law, Servco is entitled to judgment as matter of law, Servco's motion for summary judgment is hereby GRANTED and there will be judgment in favor of Servco dismissing this action.