490 So.2d 725 (1986)
OGDEN OIL COMPANY, INC., Plaintiff-Appellee,
v.
VENTURE OIL CORPORATION, Defendant,
Callon Energy Services, Inc., Intervenor-Appellant.
No. 85-403.
Court of Appeal of Louisiana, Third Circuit.
June 13, 1986.
Writ Denied October 3, 1986.
*726 Simon, Peragine, etc. (Juyd, Martinez & John C. Herbert, New Orlean, for defendant.
J. Payton Parker and Deborah P. Gibbs, Baton Rouge, for plaintiff-appellee.
Before FORET, KNOLL and MOUSER[*], JJ.
FORET, Judge.
This case involves the constitutionality and interpretation of the Oil, Gas, and Water Well Act, LSA-R.S. 9:4861 et seq.
Plaintiff, Ogden Oil Company, Inc. (Ogden), sued defendant, Venture Oil Corporation (Venture), for the balance due Ogden for workover services performed under contract with Venture. Venture reconvened, claiming a setoff.
The trial court rendered judgment in favor of Ogden in the amount of $133,386.61, plus legal interest from date of demand until paid and 10% attorney's fees. The judgment also ordered the seizure and sale, in satisfaction of Ogden's judgment against Venture, of a workover rig leased by Callon Energy Service, Inc. (Callon) and certain Callon equipment.
Callon intervened in the proceeding, alleging that the sequestration of the Callon rig and equipment was unconstitutional. Callon appeals the trial court judgment which held that the sequestration pursuant to LSA-R.S. 9:4861 et seq. was constitutional.
The issues before us are:
(1) The constitutionality of the provisions of LSA-R.S. 9:4861 et seq.; and
(2) Whether the recognition of Ogden's lien on Callon's equipment was erroneous.

FACTS
Ogden contracted to perform certain workover services for Venture on the Wilson-Johnson # 2 well situated on certain leased premises in Rapides Parish. Ogden began work on May 23, 1983, and continued to perform services and provide equipment through June 24, 1983. Venture refused to pay sums due on their open account after demand by Ogden. On September 26, 1983, an Affidavit of Statement of Claim and Privilege was filed by Ogden in the mortgage records of Rapides Parish, alleging Venture's indebtedness unto Ogden, in order to preserve the lien and privilege granted by LSA-R.S. 9:4861 et seq.[1] Ogden *727 then filed a suit on open account with a writ of sequestration upon all property located on the leased premises, including one Callon Energy workover rig. Callon's workover rig was sequestered by the Rapides Parish Sheriff.
The undisputed facts are that on or about July 25, 1983, Callon contracted with Venture to perform certain workover services on the same well Ogden had worked over. On August 1, 1983, Callon moved a workover rig onto the well site.[2]
Venture answered Ogden's suit and also brought a reconventional demand against Ogden alleging that Ogden destroyed or damaged some of Venture's equipment at the well site. Callon intervened, as aforementioned.

DUE PROCESS
A statute is presumed to be constitutional; therefore, the party attacking its constitutionality has the burden of proving otherwise. All doubt is to be resolved in favor of the constitutionality of the statute.
No authority directly on point has been cited by Callon in support of its contention that the subject statute constitutes a "taking" without just compensation, and this Court has been unable to find such a precedent.
The Louisiana Legislature has the authority to enact legislation to protect laborers and materialmen from insolvent contractors. This statute was apparently enacted in order to attract the attention of the property owner and hasten negotiable resolution, in consideration of the enormous cost of daily operations of workover services. Any other interpretation would limit this protective lien of laborers and deprive materialmen and those providing services and supplies of the basic protection which the statute was designed to provide. By its very structure, this statute demonstrates the legislature's intent to provide these parties with a remedy against both the leaseholder and the third parties who bring the well to completion. The legislature's intent would be frustrated if we were to limit the application of the statute to equipment on the leased premises at the exact instance services are rendered or supplies delivered.
Callon contends that it had no contractual or debtor/creditor relationship with Ogden and that, therefore, this constitutes an unconstitutional "taking" by the State of *728 Louisiana for which no compensation is provided.
As previously stated, the legislature has the authority to enact laws to protect laborers and materialmen by creating liens in their favor on machinery and equipment used in well drilling in connection with which their labor and services are performed. The fact that these liens may affect the drilling equipment of a third person who permits his property to be placed on the leased premises and used by the lessee, his agent or his employee in drilling operations, does not alter the legal situation. Sargent v. Freeman, 204 La. 997, 16 So.2d 737 (La.1943).
The Oil, Gas, and Water Wells Act protects all suppliers and laborers in the oilfield industry. Callon too would be entitled to the protective lien and privilege granted by the statute had it not been paid for its services. Its right could have been exercised against any equipment found on the premises, regardless of ownership, as well as against the products of the well itself. We must presume that Callon was aware of this statute and was aware that there existed the possibility that its property might become subject to another's lien. With this knowledge, albeit imputed, Callon voluntarily put its property on the leased premises. Admittedly, the statute is harsh, but Callon cannot plead ignorance of its existence.
Although, as a general rule, a "taking" can occur where the government makes it possible for someone to obtain the benefits of another's property, the question of whether there is a "taking" cannot turn simply on legal principles of law; it must be based on the particular circumstances of each case. Aris Gloves, Inc. v. United States, 190 Cl.Ct. 367, 420 F.2d 1386 (1970). Cases cited by Callon to support its contention that the seizure of the Callon rig was a taking without just compensation are factually distinguishable from the instant case and inapposite. Those cases represent situations whereby a legislative regime takes property of one party in order to protect the financial interest of a private citizen. This statute protects all laborers and suppliers, Callon as well as Ogden.
Louisiana has had a special lien for suppliers in the oilfield since 1916. Repeated attacks on the constitutionality of the statutes creating the lien have been unsuccessful. Sargent v. Freeman, supra, and cases cited therein; "Mechanics and Materialmen's Liens in the Louisiana Oil Patch", Steven J. McGarry, 29 La.Bar J. 67 (1981); "The Privilege for Drilling and Operating Expenses", Robert L. Cabes, 23rd Annual Institute on Mineral Law.
After assessing Callon's loss and the protection given to Callon, as well as any other supplier of materials and/or services in the oilfield, we conclude that no "taking" has occurred under this statute.

EQUAL PROTECTION
Callon additionally contends that the Oil, Gas, and Water Well Lien Statute denies it equal protection of the laws under Art. 1, § 3 of the Louisiana Constitution and the 14th Amendment of the United States Constitution.[3]
The function of the equal protection clause is to measure the validity of classifications created by state laws. Rudolph v. Massachusetts Bay Insurance Co., 472 So.2d 901 (La.1985). Callon contends that it is entitled to equal protection under LSA-R.S. 9:4861 which has not been afforded it. We note at the outset that Callon, although a corporation, is entitled to equal protection under the law. Lewis K. Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929 (1933). Callon further argues that a statutory classification of a member of a non-suspect class, such as itself, must bear a rational relationship to the legislature's objective in enacting the *729 statute. R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983); Williams v. Lallie Kemp Charity Hospital, 428 So.2d 1000 (La.App. 1 Cir.1983), writ denied, 434 So.2d 1093 (La.1983); Carbonell v. Dept. of Health & Human Resources, 444 So.2d 151 (La.App. 1 Cir.1983).
In its brief, Callon contends that the intent of the Oil Well Lien Statute is to protect laborers and materialmen by giving them a lien on equipment with which they are associated or to which their work is connected. Callon argues that the lien on its rig bears no rational relationship to the legislative purpose and that the statute is arbitrary and capricious. Furthermore, it argues that third party contractors in no other industry are subjected to the risk that their property will be seized and sold to satisfy the debt owed by a fellow contractor. We do not find Callon's contentions meritorious.
Equal protection does not mandate equal treatment. The legislature may normally discriminate in its regulatory schemes, but it cannot run afoul of equal protection. Classifications cannot be based on impermissible criteria or arbitrarily used to burden a particular group. Whether a classification can be said to meet the equal protection guarantee depends upon the purpose one attributes to the act and the degree of relationship between the end sought and the group affected. Ledet v. Fischer, 548 F.Supp. 775 (D.C.La.1982). In our analysis of this statute, we will use the "rational basis" test.
Under the "rational basis" test, we presume that the challenged statutory distinctions are constitutional. Town of Ball v. Rapides Parish Police Jury, 746 F.2d 1049 (5th Cir., 1984). Because states are afforded a wide scope of discretion under the "rational basis" test, the 14th Amendment safeguard of equal protection is offended only if the classification rests on grounds which are wholly irrelevant to the achievement of the state's objective. Arceneaux v. Treen, 671 F.2d 128 (5th Cir., 1982).
The challenged statute was designed to afford basic protection to laborers and suppliers. It was enacted to give them bargaining leverage so they might protect themselves from the insolvent or slow contractor. Robert L. Cabes, "The Privilege for Drilling and Operating Expenses." 23rd Annual Institute on Mineral Law; Sargent v. Freeman, supra. This protection is afforded laborers, materialmen and suppliers irrespective of whether the drilling rig and equipment is owned by the person drilling the well or by a third person. Without such a provision, the statute would have little practical effect. The fact that liens created may affect drilling equipment of their party contractors who permit their property to be placed on the leased premises and used by a lessee, his agent, or employees in drilling operations, does not change the legal situation.
The lien afforded under LSA-R.S. 9:4861 is somewhat analogous to: the laborer and materialmen's lien upon land and buildings on which labor has been performed and/or materials furnished, regardless of their ownership; the mechanic's lien in favor of persons repairing motor vehicles and machinery, lessor's lien and privilege for rent on any property (with few exceptions) found in the leased premises regardless of who may own the property, and the Bulk Sales Act, etc.
Because it is within the legislature's power to create laws to protect laborers and materialmen by creating liens in their favor on machinery and equipment used in drilling wells in connection with which their labor is performed, we find that Callon has been afforded equal protection of the laws. The record reflects that Callon allowed its drilling rig and equipment to be placed on the leased premises and used in the drilling of the oilwell. We fail to see wherein Callon has been deprived of any fundamental rights. Sargent v. Freeman, supra.

WAS THE RECOGNITION OF OGDEN'S LIEN ERRONEOUS?
Callon persistently contends that the lien on its rig and equipment did not *730 carry through the statutory intent and that the trial court's application of the statute was erroneous. Callon argues that its rig had no connection to Ogden's performance of labor and furnishing of materials. Callon argues that the intent of the statute is that the lien only attach to property used in connection with operations taking place contemporaneously with the services forming the basis of the lien.
The jurisprudence in Louisiana has clearly established that: (1) the lease on which the well is located defines the area subject to the privilege.[4]P.H.A.C. Services, Inc. v. Seaways International, Inc., 393 So.2d 117 (La.App. 1 Cir.1980), affirmed 403 So.2d 1199 (La.1981); Ogden Oil Co. v. Servco, 611 F.Supp. 572 (D.C.La., 1985), and cases cited therein. (2) The privilege does not attach to the landowner's property. Ogden Oil Co. v. Servco, supra, and cases cited therein. (3) The privilege attaches to all property listed in the statute, regardless of ownership of the property. Id. (4) The statute does not require of a contractor any contractual relationship between the furnisher of the materials and the owner, operator, or driller of the oilwell. Id.
Clearly, the statute (quoted at page 726 of this review) grants a lien or privilege to any person who performs labor or services under any person who furnishes trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies, and the privilege extends to "all oil or gas produced from the well or wells ...". Since Callon's workover rig was "thereto attached" to the Wilson-Johnson # 2 well drillsite for drilling the well, Ogden's privilege attached to the rig even though Ogden had ceased furnishing materials and supplies more than a month before Callon moved its rig onto the site.
Because Louisiana law and the statute do not require a contract or any contractual relationship between the furnisher of the materials and the owner, operator, or producer or driller of the oilwell, and because the lease on which the well is located defines the area subject to the privilege, we believe that the trial court properly interpreted and applied the statute as written.
The statute itself extends prospectively since production is normally at the end of the drilling process. The statute also extends to "all machinery, equipment, material or supplies" in connection with the drilling of any well "or in connection with the operation of any oil, gas, or water well." Requiring each claimant to establish that he furnished labor, services, supplies, materials, or equipment at a time when the particular property against which the claim is made was located upon the site is a task impossible in many instances. Ogden Oil Co. v. Servco, supra. The liberal, non-technical construction of the statute does not favor the interpretation advanced by Callon. Clearly, the legislature intended no artificial barriers to be interposed; and that all property and equipment used in the drilling operation of any well would be subject to the privilege in favor of those who furnish labor, materials, supplies, or equipment. If the legislature had intended to restrict the application of the privilege solely to machinery and equipment located on the lease at the time supplies, materials, etc. are furnished, it could have easily said so and the broad, allencompassing language used in the statute clearly indicates a contrary intent.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Callon.
AFFIRMED.
NOTES
[*] Judge Edward M. Mouser, of the 33rd Judicial District Court, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] R.S. 9:4861, prior to its amendment in 1984, read as follows:

"§ 4861. Privilege for labor, services or supplies
Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection. Any person who does any trucking, towing, or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas, or water well or wells, whether or not a producing well is obtained and whether or not such materials, machinery, equipment, services and supplies are incorporated in or become a part of the completed oil, gas or water well, has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached for drilling, equipment and operation of the well or lease, for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank only to the privilege granted in favor of laborers."
[2] Callon is the lessee of the seized rig which is owned by a third person not involved in this suit.
[3] Callon did not argue this issue at trial and it has been raised for the first time on appeal. Although appellate courts of this State do not consider claims of unconstitutionality not raised in the trial court, inasmuch as Callon did raise the issue of an unconstitutional "taking" in the trial court, we will consider the equal protection issue.
[4] But see Louisiana Materials Co., Inc. v. Atlantic Richfield Company, 486 So.2d 776 (La.App. 4 Cir.1986).