In re Gary James GUIDRY, and Geneva Comeaux Guidry, Debtors.

Bankruptcy No. 486–00210.

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

Aug. 8, 1988.

Max Morris, Lake Charles, La., for trustee.

Michael Thompson, Lafayette, La., for Maxim's Water Well Service.

W.J. Riley III, Jennings, La., for creditors listed in Opinion.

David Marcantel, Jennings, La., for debtors/Guidrys.

## MEMORANDUM OPINION

W. DONALD BOE, Jr., Bankruptcy Judge.

This contested matter comes before the Court on motion by Lloyd George Guinn, Jr., Andrew Lee Guinn, Belinda Leger Guinn, James Paul Guinn, and Laurie Roe Guinn, creditors, requesting an order to distribute funds and to quiet title to property. Maxim Bourque d/b/a Maxim's Water Well Service, objects to the Guinns' motion and also moves to quiet title and requests recognition of his lien against the debtors' claim of exemption. The trustee of the debtors' estate, Rudy O. Young, objects to both motions. Unfortunately, the Court cannot grant the full relief requested by any of the parties. However, the Court is able to make some determinations that will narrow the issues of quieting title. For the reasons that follow, the motion by the Guinns is GRANTED IN PART in that the

sale proceeds should be distributed; the Court holds that debtors' request for exemption did not apply to the lien of Bourque and that the lien extended to the house removed from the property; and the remaining motions are DENIED WITHOUT PREJUDICE.

FACT SUMMARY:

On February 15, 1985, the Guinn family sold three real estate lots in Jefferson Davis Parish to Gary and Geneva Guidry (debtors) for $14,250 by credit sale; $3,000 was paid at closing according to the deed, and the Guinns retained a vendor's privilege for the $11,250 balance. *See* Credit Sale Deed, attached to the Guinns' proof of claim filed March 14, 1986.

On February 12, 1986, the Guidrys filed bankruptcy, and the lots became property of the estate. 11 U.S.C. sec. 541(a)(1). The trustee and the Guinns commenced an adversary proceeding on June 13, 1986, to sell the property to the Guinns free and clear of all liens and encumbrances. *See Guinn et al. v. Maxim's Water Well Service, et al.*, Adv.Proc. no. 486–0089. The adversary complaint sought sale of the property "including all buildings and improvements situated thereon." Complaint, para. 1.

Maxim Bourque d/b/a Maxim's Water Well Service was named a defendant in the adversary proceeding and received notice of the sale because he held an unsatisfied labor and materialman's lien filed against the property, based on a water well drilled for the residence. (*See* proof of claim filed on March 11, 1986.) Neither Bourque nor anyone else filed an objection in the adversary proceeding to the proposed sale free and clear, and a preliminary default was entered.

Nevertheless, during the argument of this matter, Bourque's attorney stated that he had informally advised the trustee of Bourque's objection to the sale and of his higher bid of $12,000 for the property. These events are substantiated by the record in the adversary proceeding. On December 9, 1985, the trustee noticed creditors that he intended to sell the property (including all buildings and improvements situated thereon) to Bourque for $12,000.

This notice (filed in the adversary proceeding on December 10, 1986) gave a 35–day period for objections and/or higher bids. No objections having been filed, this Court on January 27, 1986, ratified this sale to Bourque free and clear of all encumbrances, with liens to be referred to proceeds. The Court's order ratified sale of the property with "all buildings and improvements." (*See* Judgment of Default entered January 27, 1987.)

On January 29, 1987, the trustee deeded the property to Bourque. Bourque's counsel stated that Bourque negotiated a check to the trustee for the property in November upon making the successful bid.

Bourque alleges that, at some point while the trustee was holding the deed (before the January 29 deed to Bourque was executed), the house was wrongfully removed from the property. The trustee's and the debtors' attorneys stated at the hearing that the debtors purchased the *house only* from the trustee for $1,000 (the difference between "appraised value" of $16,000 and the homestead exemption of $15,000).

The Court has not seen the appraisal or the deed covering the trustee's sale of the house to the debtors (if one exists). The official file in the bankruptcy case and the file in the adversary proceeding indicate no notice to the creditors of this particular sale of the house to the debtors.[1] To complicate matters further, the Court was informed by counsel that by August 1987, the debtors sold the house to a third party, not presently before the Court, for $16,500.[2]

MOTIONS BEFORE THE COURT:

The Guinns move for distribution of proceeds from the trustee's sale of the property to Bourque in satisfaction of their vendor's privilege. Bourque objects to the Guinns' motion (but evidently not to their status as first lienholders on the lots). Bourque has also filed a motion to quiet title, maintaining that he purchased the house along with the lot and requesting that the sale to the debtors be voided and that the house he thought he had purchased be surrendered to him. Bourque also claims that the trustee improperly recognized and applied the homestead exemption to the structure. *See* supplemental memorandum and transcript of hearing, p. 17 and p. 21, lines 2–10. Bourque claims that his lien is preserved against exemptions under Bankruptcy Code section 522(c)(2).

The trustee's filed oppositions deny each and every allegation in the motions of the Guinns and Bourque. However, at the hearing on the motions, the trustee's attorney admitted that the trustee recognized the debtors' homestead exemption, by allowing them to buy the house from the estate for $1,000 (its then value of $16,000 minus $15,000 exemption) (tr. p. 5, lines 12–21; *see also* tr. p. 20, lines 8–13). Trustee's counsel also appears to agree that the house was on piers and was actually moved after the sale to debtors, but not that it was "immovable" property under Louisiana law.

The trustee advised the Court that he proposed settling with Bourque by offering to rescind the sale and return the $12,000 purchase money (tr. p. 8, line 5). The trustee also argued that there was no meeting of the minds (tr. p. 20, lines 13–18) and that the appropriate remedy would be rescission of the sale to Bourque for error. However, there is no motion for this relief, and Bo-

---

1. At the hearing the trustee's and the Guinns' attorneys stated that an announcement was made at the 341 meeting of creditors that the house was movable and would be sold. *See* transcript of hearing, p. 21, lines 22–24, and p. 34, line 22. Such notice does not comply with that required by Bankruptcy Rule 2002(a)(2) for a sale of property of the estate other than in the ordinary course of business.

2. The bankruptcy case file shows that the debtors' schedules placed a $20,000 value on the structure alone. Schedule B–3, item b. The debtors also valued the underlying lot, with all buildings and improvements, on schedule B–1, at $12,000. The trustee and the Guinns' application to sell *both* the land and improvements free and clear stated that the "appraised" value was $10,500 (complaint, para. 1). Bourque's deed purports to transfer the lot with improvements for $12,000. The Court has not seen any appraisals, and the conflicting valuations and prices provide no assistance to the Court in determining the matters before it.

urque does not consent to rescission (tr. p. 18, lines 8–9 and p. 20, lines 21–22).

Debtors' counsel argued at the hearing that the house was no longer on the lot by the time Bourque received his deed and that therefore the deed could not have transferred the house to Bourque, because transfer of title became effective only when the deed was executed. *See* tr. p. 29.

There is also a dispute as to the extent of the liens, a matter which should normally be determined by an adversary proceeding. Bankruptcy Rule 7001. The trustee claims that no liens attached to the house (tr. p. 15, line 10), insisting that Bourque's proof of claim applied only to the well, not the house (tr. p. 26, line 12). Bourque claims his lien applies to the whole property, land and improvements (tr. p. 17).

DISCUSSION

■ The initial question before the Court, one that the Court cannot fully answer without more facts, is whether the trustee transferred the house with the land to Bourque. The Court has not seen the deed to Bourque. However, it is undisputed that the deed did transfer the underlying lot. Under Louisiana law a transfer of an immovable (the lot) includes its component parts, which include a building which belongs to the owner of the tract. La.Civ. Code arts. 469 and 463.[3] Both the structure in question as well as the tract of land were owned by the trustee as property of the estate. 11 U.S.C. sec. 541(a)(1).

■ Whether the structure constitutes a "building" must also be determined. The term is not defined by the Civil Code. Whether a structure is a "building" is left to judicial determination in light of the societal needs of the times. *Ellis v. Dil-lon*, 345 So.2d 1241, 1243 (La.App. 1st Cir. 1977). Various characteristics of the house in question suggest that it is an immovable building. For example, it appears from the schedules to be substantial,[4] and it was used as a residence. It is also undisputed that the house was on piers or pilings, as was the case in *Graffagnino v. Lifestyles, Inc.*, 402 So.2d 742 (La.App. 4th Cir.1981) (holding an O-dome structure on piers used as a dwelling was an immovable "building or improvement"). This is the only stipulation concerning the degree of integration with the soil, however. At this stage there is no evidence of the degree of permanency—the most important element in determining whether a structure is a building or a component part of a tract of land. *See Telerent Leasing Corp. v. R & P Motels, Inc.*, 343 So.2d 267, 269 (La.App. 1st Cir. 1977). The Court supposes that the debtors lived in the house for some time and that it is still used as a residence, but there is no evidence of record on these matters.

■ The fact is that there is virtually no evidence of record on the issue of the movable or immovable nature of the structure. The arguments are almost entirely based on supposition. The movable/immovable issue is a factual question that must be determined to quiet title. The Court has insufficient evidence before it to determine this contested question.[5]

■ Irrespective of whether the structure was movable or immovable, there would be no sale if there were no consent. Bourque's position is that he purchased the land with all buildings and improvements. At the hearing the trustee argued in effect there was no true agreement as to the thing to be sold, and, consequently, that

---

3. The Court presumes that the Bourque deed purports to transfer the land "with all buildings and improvements," but in view of Civil Code article 469, the same result would apply by operation of law even if the deed were silent in this respect.

4. The structure was scheduled as "One (1) wood-frame house with cedar siding 26' x 44', with a 26' x 24' carport, three (3) bedrooms, and two (2) baths ... purchased as a movable home and moved onto real property by debtors."

5. The trustee maintained that the house was or became movable when the trustee sold it and it was carried away. The trustee would not concede that it was immovable before it was moved (*see* tr. pp. 13 and 37–39). This does not assist the determination of whether the structure was movable or immovable, because an immovable building can be "deimmobilized" by the owner by selling and delivery to acquirers in good faith, La.Civ.Code art. 468, para. 2, and a movable can likewise be sold and delivered.

there was no sale; or that there was error and the sale should be rescinded. Under Louisiana law, consent as to the thing sold is an indispensable element of the contract. La.Civ.Code art. 2439. Also under Louisiana law (as elsewhere) consent can be vitiated by error. La.Civ.Code art. 1948.

There is no question from the record of the adversary proceeding that the sale to Bourque was initially intended to include buildings and improvements: every description from the complaint through the final order in the adversary proceeding make this intent manifest. Another aspect of the adversary complaint manifests an intention to sell buildings along with the raw land: the complaint contained a special request, which was granted by this Court, to shorten the time for opposing the application to sell, because the usual period of delay "would expose the property to loss by fire, vandalism and the like, in addition to the usual wear and tear on the property." Complaint, para. 6. Vandalism and wear and tear are dangers only to buildings and other improvements—not to raw land alone. This special request denotes that an improvement was involved.

There is no evidence submitted by either side as to error. The trustee seems to want the Court to infer consent-vitiating error from his subsequent sale of the house. The Court cannot make such an inference without evidence. There is no evidence of what transpired at the November meeting, for example, when the Bourque made his bid and gave the trustee his check. Nor is there evidence of any discussion or agreements between the trustee and Bourque concerning what was transferred. As previously mentioned, the Court has not seen the deed to Bourque. The Court cannot make a finding of error or mistake in the parties' intentions without evidence of the contract and, possibly, of consent or lack of consent.

Under *Graffagnino*, parol evidence might not be admitted to negate language in a deed stating that the sale is "with all the buildings and improvements thereon," unless there was mutual mistake subject to reformation.[6] However, *Graffagnino* was interpreting the parol evidence rule as it appeared in Louisiana Civil Code article 2276; *see* now La.Civ.Code art. 1848. Under the new Code article, a court can allow parole evidence to prove a vice of consent "in the interest of justice." A ruling on whether or what parol evidence will be allowed is premature at this point,[7] but may be necessary before these matters are finally resolved.

If the trustee desires to seek rescission based on error or vice of consent, he must follow the procedures in the Bankruptcy Rules. The trustee's informal rescission request made at the hearing is denied. The trustee in effect has asked the Court to force Bourque to accept the trustee's offer to settle this dispute.

---

**6.** The trustee did not advance an argument for reformation for mutual mistake, but at one point the trustee argued that Bourque "knew he was only buying the property and not the house" (tr. p. 8, lines 14–15). There was no evidence of this—only the trustee's counsel's argument—and there is no request before the Court to reform the deed to exclude buildings.

**7.** This Court is unsure whether the parol evidence rule would preclude parol evidence from contradicting the deed in this particular case. Special rules govern auction sales and judicial sales. *See* La.Civ.Code arts. 2601 through 2625. The Court has insufficient facts about the procedure by which Bourque bid for the property to determine that the sale does not qualify as an "auction" sale; if it was an "auction" sale, then transfer of title would have been effective immediately following the moment when the highest price was "cried long enough to make it probable that no higher would be offered," when Bourque was publicly declared to be the purchaser, and the lot was adjudicated to him. La.Civ.Code art. 2607. "This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale." La.Civ.Code art. 2608. If the foregoing Code articles apply, then transfer of title occurred earlier than the signing of the deed.

Application of the auction sale Civil Code articles would also defeat the debtors' argument that the sale to Bourque could not have transferred the house because the deed was executed when the house was already gone. The general rule that a sale of an immovable is effective only when reduced to writing does not apply to auction sales. *Cf.* La.Civ.Code arts. 468 and 2608.

Title to the house cannot be quieted at this juncture. Was the house a "building"? Did the sale become effective before or after the house was removed? Was there a vice of consent or mutual error? Are there intervening rights of good faith purchasers? These unanswered questions and perhaps others prevent the Court from quieting title on the scant facts before it.

The question of whether Bourque's lien survives against the claimed homestead exemption is governed in part by Bankruptcy Code section 522 and Bankruptcy Rule 4003. A debtor is to claim exemptions by scheduling them, and objecting creditors can file objections within thirty days after the conclusion of the meeting of creditors. Rule 4003(a) and (b). Unless a party in interest objects, the property claimed as exempt on the list is exempt. 11 U.S.C. sec. 522(*l*). The trustee argues that the exemption was properly recognized, because it was claimed and no one objected.

The schedules in this case show a confusing attempt by the debtor to claim a homestead exemption. Schedule B-4 purports to claim the house as exempt, but carries the notation: "NO EXEMPTION REQUEST IS VALID AGAINST ANY CREDITOR HOLDING A SECURED INTEREST." Schedule B-1 lists both the credit sale deed and the Bourque labor lien (among others) as valid encumbrances on the three lots in Jeff Davis parish including "all building [*sic*] and improvement situated thereon." A reading of these two schedules together indicates to this Court that the debtor did not try to claim exemption against the secured creditors listed.

Schedule B-3, item b, describes the house separately as property of the debtor, and notes: "This house was purchased as a movable home and moved onto real property owned by debtors. The court will have to determine whether the Sale w/vendors lien affecting the underlined [*sic*] property is also a mortgage on the movable house." No such question is raised in the schedules regarding the Bourque lien.

■ This Court finds that the schedules do not manifest an intention by the debtor to claim the exemption against Bourque's lien. On the face of schedule B-4, the debtors specifically state that their request is not valid against a creditor holding a secured interest.

Bourque held a "secured interest" in the house under Louisiana law. A water well lien attaches to the "water well or wells and the lease whereon the same are located" and to "all ... machinery ... appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease...." La. Rev.Stat.Ann. sec. 9: 4861 A (West Supp. 1988). There is no requirement that the structure be "immovable." There is not even a requirement that the machinery, building, or other structure be located on the premises at the time the supplies or labor was furnished. *See Ogden Oil Co. v. Servco*, 611 F.Supp. 572, 575–76 (M.D.La. 1985). It is clear that any application of the homestead exemption to the detriment of the holder of a valid labor lien is contrary to the exemption law of Louisiana, which provides the following exception to the homestead exemption:

> for labor money and material furnished for building, repairing, or improving homesteads....

La.Rev.Stat. ann. 20: 1(C)(2) (West Supp. 1988).

Because the lien is valid and the claim of exemption appears to put holders of a valid lien on notice that the exemption claim will not prejudice them, it would be unreasonable to require Bourque to object to an exemption claim which did not (evidently) impinge on his lien.

With the house subject to the lien of Bourque, the full homestead exemption should not have been credited to the debtors. However, if Bourque succeeds in showing that he had title to the house, the trustee's sale to the debtors of property belonging to Bourque will be null. La.Civ. Code art. 2452. If the sale is annulled, Bourque's request to preserve his lien against the debtors' exemption will be moot, because his lien will be extinguished by his acquisition of the property subject to the lien. *See* La.Civ.Code arts. 1903 and

3277. Again the Court cannot presently grant the relief requested.

■ Whatever happens regarding the house is a question to be decided another day, it is hoped by settlement without further hearings in this Court. However, resolution of that question (whether by settlement or further proceedings) does not affect the supremacy of the Guinns' vendor's privilege on the lot. The credit sale deed was recorded February 15, 1985, and the subsequently filed water well lien (recorded April 23, 1985) is outranked because of the first-in-time rule of Louisiana registry laws. La.Civ.Code arts. 3273, 3271, and 3347. There is no question that the same lot was purchased by Bourque and that liens were to be referred to the proceeds of the sale. *See, e.g.,* Notice by Trustee of Intent to Sell Property at Private Sale (filed in adversary proceeding on December 10, 1986). The proceeds of the sale, therefore, should properly be distributed first in satisfaction of the vendor's privilege.

Because the Court has insufficient facts before it to rule completely on the merits of the motions to quiet title, the motions are denied without prejudice, except as indicated above. Future proceedings in this case should be in accordance with the Bankruptcy Rules of Procedure, particularly Rule 7001 if applicable.