668 So.2d 1363 (1996)
SUPREME CONTRACTORS, INC.
v.
HALLIBURTON LOGGING SERVICES, INC.
No. CA 94 0234R.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Writ Denied April 26, 1996.
*1364 Daniel Cavell, Thibodaux, for Plaintiff-Appellee, Supreme Contractors, Inc.
Raymond Beyt, Lafayette, for Plaintiff-Appellee, Supreme Contractors, Inc.
Robert W. Daigle, Lafayette, for Defendant-Appellant, Halliburton Logging Services, Inc.
Harry R. Holladay, Douglas L. Grundmeyer, New Orleans, for Amicus Curiae, Petroleum Equipment Suppliers Association.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
This matter is before us on remand from the Louisiana Supreme Court. On December 22, 1994, this court rendered a decision reversing the trial court's granting of a summary judgment in favor of Supreme Contractors, Inc. (plaintiff), and against Halliburton Logging Services, Inc. (defendant). Supreme Contractors, Inc. v. Halliburton Logging Services, Inc., 94-0234 (La.App. 1st Cir. 12/22/94), 648 So.2d 461. The Supreme Court granted Supreme Contractors' application for writ of certiorari and remanded the case to this court for reconsideration in the light of Guichard Drilling v. Alpine Energy Serv., 94-1275 (La. 7/3/95), 657 So.2d 1307. Supreme Contractors, Inc., 95-0052 (La. 9/29/95), 660 So.2d 866.

I.
On January 31, 1989, Supreme Contractors submitted an invoice in the amount of $7,587.17 to WTL Energy, Inc. for oilfield services provided on the W.A. Jones No. 5 well in the Cut Off Field in Lafourche Parish. Supreme Contractors recorded a notice of lien and privilege against the Jones well for the amount of its invoice on July 25, 1989. Subsequently, WTL Energy submitted a payment in the amount of $750.00 to Supreme Contractors.
On February 1, 1990, WTL Energy transferred certain leases, (which included the land on which the well at issue is situated) related wells and equipment to Sea Hawk Oil and Gas Company and Alpine Energy, Inc. These assignments were recorded in the public records of Lafourche Parish on April 12, 1990.
On July 11, 1990, Supreme Contractors filed suit against WTL Energy in the 17th JDC to recover the unpaid balance of $6,837.17 and to enforce its lien and privilege against the Jones well. (Neither Sea Hawk nor Alpine was named as a party to this action.) On July 18, 1990, Supreme Contractors filed a "Notice of Pendency of Action" in the public records of Lafourche Parish.
*1365 On September 22, 1990, the defendant in the present action, Halliburton, performed production evaluation services on the Jones well at the request of Sea Hawk. The work performed by Halliburton was accomplished in one day, and was performed using machinery and equipment brought to and from the worksite by Halliburton.
On December 7, 1990, Supreme Contractors obtained a default judgment against WTL in the sum of $6,837.17 together with interest, attorney's fees and costs. On September 20, 1991, Supreme Contractors, relying on its judgment against WTL, filed an action against Halliburton for a writ of sequestration, seeking recognition of its lien and privilege against the machinery and equipment used by Halliburton on the well site in the performance of services on September 22, 1990. Supreme Contractors asserted that its lien and privilege against WTL Energy attached to Halliburton's property when it arrived on the well site. Supreme Contractors further alleged that it was entitled to enforce the lien by writ of sequestration when Halliburton removed its machinery and equipment from the site without the consent of Supreme Contractors.
The trial court granted summary judgment in favor of Supreme Contractors, recognizing its lien and privilege and issued a writ of sequestration to seize and sell Halliburton's machinery and equipment. Halliburton appealed.
Halliburton asserted the trial court erred in its application of the Louisiana Oil, Gas and Water Wells Lien Act, La.R.S. 9:4861 et seq., that the application violated Halliburton's due process rights, and that even if Supreme Contractors had lien rights, such rights were extinguished by the passing of the one year peremptive period provided by La.R.S. 9:4865.
La.R.S. 9:4861 creates a lien and privilege in favor of anyone who performs any labor or service or furnishes supplies in connection with any oil, gas or water well. The statute provides, in pertinent part:
A. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water ... has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines ... and other structures thereto attached or located on the lease....
The lien creates only an in rem liability; it does not create any personal obligations or rights and is not dependent on the owner of the liened property. Genina Marine Services, Inc. v. Arco Oil & Gas Co., 552 So.2d 1005, 1008 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1281 (La.1990).
La.R.S. 9:4862 provides, in pertinent part:
A. (1) To preserve the privilege granted by R.S. 9:4861, a notice of such claim or privilege, setting forth the nature and amount thereof, shall be filed for record and inscribed in the mortgage records of the parish where the property is located....
La.R.S. 9:4865 provides:
The privilege granted under this Part shall be extinguished if:
(1) The claimant or holder of the privilege does not preserve it as required by R.S. 9:4862; or
(2) The claimant or holder of the privilege does not institute an action thereon within one year after the date of recordation of notice of the privilege.
Pretermitting the other issues raised by Halliburton's appeal, this court held Supreme Contractors' privilege created by La.R.S. 9:4861 as to Halliburton's property and equipment was extinguished upon the passing of one year and once the peremptive period lapsed, the right ceased to exist. Any claims Supreme Contractors might have had against Halliburton had been perempted when Supreme Contractors filed an action *1366 against Halliburton more than two years after the recordation of its lien against WTL Energy. Therefore, this court reversed the summary judgment granted by the trial court in favor of Supreme Contractors. Supreme Contractors, Inc., 94-0234, pp. 4-5, 648 So.2d at 463.
While Supreme Contractors' application for writ of certiorari was pending, Guichard Drilling v. Alpine Energy Serv., 94-1275 (La. 7/3/95), 657 So.2d 1307, was decided by the Louisiana Supreme Court, and we now reconsider our prior decision in the instant case. In Guichard Drilling, Transamerica hired Alpine Energy to drill a well in St. Martin Parish. Alpine subcontracted the drilling services to Guichard. Guichard was not paid and timely filed both an affidavit asserting the lien and a suit against Alpine to enforce the lien. Guichard also sent notice of the action to the record owner of the mineral lease. The lease owner did not intervene and Guichard obtained a default judgment against Alpine. Guichard then sought to have the default judgment made executory and garnished funds held by Texaco which were owed to the lease owner. The lease owner intervened and filed a peremptory exception raising the objection of prescription. The trial court denied the lease owner's exception and the lease owner appealed.
The Supreme Court held Guichard had complied with the statutory requirements of the Oil, Gas, and Water Wells Lien Act, that the lease owner was not an indispensable party to the Guichard's suit against Alpine, and therefore, did not have to be a named party to the suit in order to have Guichard's lien recognized against the whole of the property, and that the judgment recognizing Guichard's lien rights did not violate the lease owner's due process rights. Lastly, the Supreme Court stated that regardless of whether the act was peremptive or prescriptive, Guichard's timely action on the lien was effective against the whole of the property and Guichard's claims were not extinguished.
This case is controlled by the holding in Guichard Drilling. Pursuant to La.R.S. 9:4862, Supreme Contractors, after failing to be paid for services, recorded its lien against the Jones No. 5 well on July 25, 1989. On July 11, 1990, within one year of recording its lien, Supreme Contractors instituted an action to enforce its lien against the Jones well, as required by La.R.S. 9:4865. Supreme Contractors performed the acts required by statute. Being an action on the lien effective against the whole of the property, it served to preserve the lien as to the whole of the property. Supreme Contractors' claim against the property was not extinguished. Because Supreme Contractors' right had not been extinguished reversal by this court of the trial court's granting of summary judgment was in error and is hereby reversed. Our prior decision pretermitted consideration of Halliburton's other assignments of error and we now consider them.

II.
Halliburton asserts as error the trial court finding that Supreme Contractors' lien, which had been filed and perfected, attached to Halliburton's equipment which was placed on the lease property after the filing and perfecting of the lien.
Louisiana jurisprudence has clearly established that (1) the lease on which the well is located defines the area subject to the privilege; (2) the privilege does not attach to the landowner's property; (3) the privilege attaches to all property listed in the statute, regardless of ownership of the property; and (4) the statute "does not require a contract or any contractual relationship between the furnisher of the materials and the owner, operator, producer or driller of the oil well." Ogden Oil Co. v. Servco, A Div. of Smith Intern., 611 F.Supp. 572, 575 (D.C.La.1985). However, we address for the first time whether the lien attaches to equipment placed on the lease property after the lien has been filed and perfected.
In Ogden Oil Co., Inc. v. Venture Oil Corp., 490 So.2d 725, 729-30 (La.App. 3rd Cir.), writ denied, 494 So.2d 328 (La.1986), the owner of seized equipment placed on a *1367 drillsite after a supplier had ceased furnishing materials and supplies but before recordation and perfecting of the supplier's lien argued the lien did not attach because the seized equipment was not located on the lease at the time supplies were furnished. The court considered whether there was a necessity for the equipment seized to have been located at the drillsite contemporaneously with the lien claimant furnishing materials and supplies. The court held the application of the privilege was not restricted to the equipment located on the lease at the time supplies were furnished, but applied to machinery and equipment located on the lease after the lien claimant had furnished materials and supplies.
As stated in Ogden Oil v. Venture, 490 So.2d at 730:
The statute itself extends prospectively since production is normally at the end of the drilling process. The statute also extends to `all machinery, equipment, material or supplies' in connection with the drilling of any well `or in connection with the operation of any oil, gas, or water well.'
We find the lien attaches to property moved onto the lease property after the privilege has been filed and recorded. The prospective reach of the statute to future products and proceeds and the inclusion of all equipment used in connection with the drilling of any well certainly evidences an intent on the part of the legislature for a liberal, non-technical application, disfavoring a narrow interpretation. "Although the Oil Well Lien Statute is not a model of clarity, it seems plain that the legislature intended no artificial barriers to be interposed and that all property and equipment used in the drilling or operation of any well would be subject to the privilege in favor of those who furnished labor, materials, supplies or equipment." Ogden Oil v. Servco, 611 F.Supp. at 576.
In addition, we note the prohibition against application of the privilege to equipment moved onto the lease for the purpose of plugging and abandoning the well, found in La.R.S. 9:4861.2C,[1] acknowledges the application of the privilege against equipment that is moved onto the property for other purposes. This assignment is without merit.

III.
Lastly, Halliburton asserts the trial court erred in finding due process of law does not require notice to the owner of seized property. Halliburton argues fundamental due process requires that the owner of equipment, whose interest in that equipment is purportedly seized, be made a party to any suit for judicial recognition of a lien and privilege, or receive actual notice of such suit to allow the owner to intervene or assert its objections. In Guichard, the Louisiana Supreme Court discussed the issue of due process. Relying on Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the court stated:
The minimum due process requirements for an action which will deprive a person of his or her interest in property were set out in Mennonite. ...
The [United States Supreme] Court went on to state that:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

Guichard Drilling, 94-1275, pp. 12-13; 657 So.2d at 1316.
The actual notice given to the lease owner through certified mail of the pendency of Guichard's suit gave the lease owner ample opportunity to intervene in the suit to protect its interests and assert potential defenses. However, upon receiving notice, the lease *1368 owner took no action. The court stated "the minimum requirements of constitutional due process were met by Guichard's actual notice to [the lease owner]." Guichard, 94-1257, p. 14; 657 So.2d at 1317.
However, in the instant case, there was no actual notice to Halliburton to satisfy the Mennonite requirements of due process. We must consider whether the lack of actual notice to Halliburton, or an equipment owner similarly situated, violates due process.
In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), the Court held the elementary requirement of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The Supreme Court went on to declare when the names and addresses of those affected by a proceeding are at hand, personal service, at least by ordinary mail, is required. However, the Court specifically recognized the distinction between individuals whose name and address are reasonably ascertainable and "persons missing or unknown". Mullane, 339 U.S. at 317, 70 S.Ct. at 658. In Mullane the statutory requirement of four weekly publications in a local newspaper, addressed generally without naming all parties, was sufficient for notice to an unknown person. This form of notice was not "more likely to fail than any other of the choices open to legislators endeavoring to prescribe the best notice practicable." Mullane, 339 U.S. at 317, 70 S.Ct. at 659. Mullane approved of "resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning." Mullane, 339 U.S. at 317, 70 S.Ct. at 658.
In the instant case, Halliburton is an unknown person. Halliburton's dealings in this matter were limited to contracting with Sea Hawk, long after Supreme Contractors' failure to be paid. When Supreme Contractors filed and perfected its lien against WTL, Halliburton was an unknown person, in no way connected or concerned with Supreme Contractors' proceedings. Therefore, Mullane would allow statutory notice "where it is not reasonably possible or practicable to give more adequate warning." Id. However, we find in the instant case no statutory notice requirement and we find there are reasonably possible and practicable methods of giving a more adequate warning. A publication, similar to that required in Mullane, or a warning sign prominently placed at the drillsite would provide a more adequate warning than none at all.
Moreover, although Ogden v. Venture, 490 So.2d at 728, stated the Oil Wells Lien Act "protects all suppliers and laborers", in the instant case, because Halliburton was prepaid, it received none of the protection afforded by the statute. It could not exercise a right against another entity's equipment found on the drillsite or the products of the well. Halliburton was exclusively subject to the perils of another entity's lien without receiving any protection. The statute exposes a group of suppliers and laborers to a risk without providing any protection to them or their equipment.
Therefore, we conclude that the lack of notice provided to Halliburton is incompatible with the requirements of the Due Process Clause of the Fourteenth Amendment. Accordingly, we reverse the trial court's granting of summary judgment in favor of Supreme Contractors, and dismiss Supreme Contractors' action to have its lien rights recognized against Halliburton. Costs of this appeal are assessed to Supreme Contractors.
REVERSED AND RENDERED.
NOTES
[1] La.R.S. 9:4861.2C was amended in 1992 to add the exemption of recovered tubular goods from plugged or abandoned wells.