657 So.2d 1307 (1995)
GUICHARD DRILLING COMPANY
v.
ALPINE ENERGY SERVICES, INC.
No. 94-C-1275.
Supreme Court of Louisiana.
July 3, 1995.
Dissenting Opinion July 18, 1995.
Rehearing Denied September 1, 1995.
*1309 Dennis Joseph Vidrine, Lafayette, Dana Roxanne Perkins, New Orleans, for applicant.
Guy Earl Wall, New Orleans, for defendant.
*1310 KIMBALL, Justice.[*]
We granted certiorari in this case to determine whether plaintiff, Guichard Drilling Company (Guichard)[1], validly preserved and enforced its lien under the Louisiana Oil Well Lien Act (the Act), La.R.S. 9:4861 et seq. The district court granted Guichard's motion for summary judgment upholding its lien rights against certain property, including a mineral lease in which intervenors, Transamerican Energy, LTD., III (Transamerican), Toce Oil Company (Toce) and Crossroads Oil Company (Crossroads) had an interest. The court of appeal reversed and dismissed Guichard's suit, holding that Guichard did not properly preserve its lien, and therefore, its lien rights were perempted. We conclude the court of appeal erred in so holding and reverse the court of appeal judgment. We agree with the district court that Guichard properly preserved and enforced its lien under the Oil Well Lien Act. However, because the lower courts did not address the effect of Transamerican's bankruptcy proceedings, and because there are material factual issues remaining regarding the claims of Transamerican, Toce, and Crossroads that Guichard has garnished proceeds not covered by its lien, we reverse the district court's granting of summary judgment and remand the case to the district court for further proceedings.

I.
In July of 1989, Transamerican hired Alpine Energy Services (Alpine) to drill a well on certain property in St. Martin Parish covered by an oil and gas lease known as the Wilbert lease.[2] Alpine subcontracted the drilling services to Guichard, and drilling was completed in August of 1989, resulting in a dry hole. On October 11, 1989, pursuant to La.R.S. 9:4861 et seq., Guichard filed an affidavit in the mortgage records of St. Martin Parish asserting a lien against the Wilbert lease, alleging that Alpine had failed to pay Guichard for the work it performed in drilling the well. On the date the lien was filed, Toce was the record owner of the Wilbert lease.[3]
On October 12, 1989, Guichard filed suit against Alpine in Plaquemines Parish to enforce its lien on the Wilbert lease. Neither Toce, Transamerican, nor Crossroads were named as defendants in the suit. The following day, Guichard filed a notice of lis pendens in St. Martin Parish. Copies of the lis pendens, along with copies of the lien affidavit, were sent via certified mail by Guichard to Transamerican and Toce on October 17, 1989, notifying them of Guichard's suit asserting its lien and that the suit may affect their interests in the well and lease. Neither Transamerican nor Toce sought to intervene in the suit. Subsequently, on April 19, 1990, Guichard obtained a default judgment in Plaquemines Parish against Alpine for $112,060.06 plus interest and attorney fees. Guichard also obtained a judgment recognizing Guichard's lien against the Wilbert lease and that the lien secured the money judgment against Alpine.
On July 19, 1990, Guichard filed suit in Orleans Parish to make the Plaquemines Parish judgment executory. At the same time, Guichard garnished funds held by Texaco Trading and Transportation, Inc. which were owed to Toce, Transamerican, and Crossroads for the purchase of oil produced from a productive well located on the Wilbert *1311 lease. The Plaquemines Parish judgment was made executory and the funds held by Texaco were ordered seized to satisfy Guichard's judgment.
On December 7, 1990, Transamerican, Toce and Crossroads intervened in the Orleans Parish action seeking a preliminary injunction to prohibit the garnishment of its funds and asking for a return of the funds previously seized. The district court denied injunctive relief and the intervenors sought supervisory writs from the Fourth Circuit Court of Appeal. The court of appeal reversed,[4] holding that because the intervenors were indispensable parties to Guichard's action to enforce its lien the district court erred in refusing to grant a preliminary injunction.[5] On April 3, 1992, Guichard answered the petition of intervention and reconvened naming the intervenors as defendants, again seeking recognition of its lien and its "in rem" interest in the subject lease. The intervenors responded by filing a peremptory exception of prescription. Thereafter, pursuant to Guichard's motion for summary judgment on its reconventional demand, the district court held that Guichard's lien rights were "in rem" rights and recognized the lien as securing the money judgment obtained against Alpine in Plaquemines Parish, granting Guichard's motion for summary judgment. The preliminary injunction was dissolved and the intervenors' exception of prescription was denied.
On appeal, the Fourth Circuit again reversed the decision of the district court. Guichard Drilling Co. v. Alpine Energy Servs., Inc., 93-1859 (La.App. 4th Cir. 4/14/94), 635 So.2d 1312. The court of appeal reiterated that the intervenors were indispensable parties to Guichard's suit to enforce its lien and held that because the intervenors were not made parties to the suit in Plaquemines Parish, the judgment rendered therein could not affect their ownership interests in any of the property subject to Guichard's lien. The court of appeal then held that Guichard's attempt to enforce that judgment in the Orleans Parish proceedings could not affect the rights of the intervenors, and thus, the intervenors should have been afforded an opportunity to defend Guichard's claim. However, the court of appeal rendered this holding moot by further holding that Guichard's lien was extinguished by peremption under La.R.S. 9:4865 because Guichard failed to institute an action on the lien against the intervenors within one year after recordation of its lien affidavit (the lien affidavit was filed on October 11, 1989 and Guichard's reconventional demand against the intervenors was not filed until April 3, 1992).
On Guichard's application, we granted certiorari to determine the correctness of the court of appeal's decision. 94-1275 (La. 9/23/94), 642 So.2d 1303.

II.
The Oil Well Lien Act provides broad and far reaching protection to providers of labor and furnishers of material in conjunction with the drilling of oil wells. Louisiana Revised Statutes 9:4861 provides:
A. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water ... has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or *1312 located on the lease ... for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten percent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection.
B. Any person who does any trucking, towing or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells, or for or in connection with the construction, operation or repair of any flow lines or gathering lines, regardless of their length, and any other pipeline owned by the producer, operator or contract operator of the well or wells, whether or not a producing well is obtained and whether or not such materials, machinery, equipment, services and supplies are incorporated in or become a part of the completed oil, gas or water well, has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, pipelines, flow lines, gathering lines and other related equipment, including, but not limited to monitoring, measuring, metering and control equipment and other structures thereto attached for drilling, equipment and operation of the well or lease, and rights-of-way in the case of a gathering line, flow line or other producer, operator or contract operator owned pipeline, for the amount due for such trucking, towing barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, in principal and interest, and for the cost of preparing and recording the privilege as well as ten percent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank only to the privilege granted in favor of laborers.
It is well settled under the Oil Well Lien Act that the privilege created by La. R.S. 9:4861 attaches to all property listed in the statute, regardless of ownership, and requires no contractual relationship between the supplier of labor, service, or equipment and the owner of the lease or equipment. Oil Well Supply Co. v. Indep. Oil Co., 219 La. 936, 54 So.2d 330 (1951); Sargent v. Freeman, 204 La. 997, 16 So.2d 737 (1943); Odom v. McClanahan, 196 So. 382 (La.App. 2d Cir.1940); Sutton-Zwoile Oil Co. v. Barr Petroleum Corp., 197 So. 432 (La.App. 2d Cir.1940); Blankenship v. Stovall, 159 So. 477 (La.App. 2d Cir.1935); Boudreaux v. Moon Oil Co., 158 So. 672 (La.App. 1st Cir. 1935); Sklar v. Oil Incomes, Inc., 133 F.2d 512 (5th Cir.1943). Also, it has been uniformly held that the privilege is not restricted to proceeds of the well actually drilled but rather exists on the entire lease as a whole. Standard Supply & Hardware Co. v. Humphrey Bros., 209 La. 979, 26 So.2d 8 (1946); Lor, Inc. v. Martin Exploration, Co., 489 So.2d 1326 (La.App. 1st Cir.1986); JHJ Ltd. I v. Chevron U.S.A., Inc., 806 F.2d 82 (5th Cir.1986). See also Mercantile Nat'l Bank v. J. Thos. Driscoll, Inc., 194 La. 935, 195 So. 497 (1940).
It is clear the purpose of the Oil Well Lien Act is to protect those, like Guichard, who contribute labor, services, and equipment to the drilling of wells from the default of those who engage them. Lor, Inc., supra; Ogden Oil Co. v. Venture Oil Corp., 490 So.2d 725, 727 (La.App. 3rd Cir.1986); JHJ Ltd. I, supra, (citing Standard Supply & Hardware Co., supra); Stephen J. McGarry, Mechanics and Materialmen's Liens in the Louisiana Oil Patch, 29 La.B.J. 67 (1981); Patrick H. Martin & J. Lanier Yeates, Louisiana and Texas Oil & Gas Law: An Overview of the Differences, 52 La.L.Rev. 769 (1992). See also Harriet S. Daggett, Mineral Rights in Louisiana § 78 (1949). The legislature has clearly placed the risk of the contractor's insolvency or failure to pay on those *1313 with an interest in the lease. The legislature has made a policy decision that the lease owners are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that the onus should be on the lease owners to ensure that the contractor it hires is solvent and that it actually makes payment to the subcontractor.
There are minimal procedures set out in the Oil Well Lien Act for preservation and enforcement of the privilege. In order to preserve the privilege and its rank, "a notice of such claim or privilege, setting forth the nature and amount thereof, shall be filed for record and inscribed in the mortgage records of the parish where the property is located." La.R.S. 9:4862(A)(1). In the case of laborers, the notice must be filed within 180 days after the last day of the performance of the labor or service.[6] La.R.S. 9:4862(A)(1)(a). The Act goes on to provide:
The privilege granted under this Part shall be extinguished if:
(1) The claimant or holder of the privilege does not preserve it as required by R.S. 9:4862; or
(2) The claimant or holder of the privilege does not institute an action thereon within one year after the date of recordation of notice of the privilege.
La.R.S. 9:4865. The claimant "may enforce his privilege by the writ of sequestration, without the necessity of furnishing security therefor, by swearing to the amount due him," La.R.S. 9:4866, though he is not required to enforce the privilege via the writ of sequestration. Frank's Casing Crew & Rental Tools, Inc. v. Carthay Land Co., 212 So.2d 161 (La.App. 4th Cir.1968); Harrell, The Oil and Gas Well Lien Statute, 35th Annual Institute on Mineral Law 93, 107 (Patricia Geier Young, ed.1992); Robert L. Cabes, The Privilege for Drilling and Operating Expenses, 23rd Annual Institute on Mineral Law 13, 27 (1977). This is the extent of procedural provisions the legislature has set out in relation to the privilege granted by La.R.S. 9:4861.
As a general rule, lien statutes are stricti juris and should thus be strictly construed. However, Louisiana courts have often times construed the Oil Well Lien Act in a manner which will effectuate its purposes, and have refused to erect artificial barriers to its enforcement. Ogden Oil Co. v. Venture Oil Corp., 490 So.2d 725, 730 (La.App. 3rd Cir.1986) ("The liberal, non-technical construction of the statute does not favor the interpretation advanced by Callon."); Ogden Oil Co. v. Servco, A Division of Smith Int'l, Inc., 611 F.Supp. 572 (M.D.La.1985) (citing Mercantile Nat'l Bank, supra); Martin & Yeates, supra, at 847 (citing Kenmore Oil Co. v. Delacroix, 316 So.2d 468 (La.App. 1st Cir.1975)). Such a rule has also arisen in relation to the Private Works Act, which creates a privilege somewhat similar to the Oil Well Lien Act. Subdivision Planning Engineers, Inc. v. Manor Dev. Corp., 349 So.2d 247 (La.1977) ("The Court of Appeal was in error in so strictly construing the lien statutes.... [T]he statute should not be so construed as to defeat the purpose of the statute."). Morgan v. Audubon Constr. Corp., 485 So.2d 529 (La.App. 5th Cir.1986) (Private Works Act should be construed to protect materialmen, laborers and subcontractors who engage in construction projects); Authement's Ornamental Iron Works, Inc. v. Reisfeld, 376 So.2d 1061 (La. App. 4th Cir.1979) (interpreting the Private Works Act to effectuate its purpose of protecting *1314 materialmen and laborer who engage in construction projects); Sutherland, Statutory Construction, § 69.02 (1992). Also, while the general rule of strict construction applies to the substantive provisions which create a lien, once it is determined that the substantive provisions provide for a lien, provisions relative to the enforcement of the lien are construed liberally because of their remedial nature. Summers, The Law of Oil and Gas, § 701 at 211 (1962); 3A Sutherland, Statutory Construction § 69.02 (1992). Cf. Louisiana Materials Co. v. Atlantic Richfield Co., 493 So.2d 1141 (La.1986).
In the present case, Guichard timely filed a lien affidavit, in accordance with La.R.S. 9:4862, in the mortgage records of St. Martin Parish, the situs of the property on which Guichard performed the drilling services. The next day, and thus well within a year of filing its recordation of notice, Guichard filed an action against Alpine for the debt allegedly owed to Guichard by Alpine, and for judicial recognition of its lien on the subject property securing that debt. The district court rendered judgment in favor of Guichard against Alpine in the amount of $112,060.06, and rendered judgment recognizing Guichard's lien on the subject property. In our view, Guichard has complied with the statutory requirements for preservation of its lien.

III.
The Appellees (Toce, Transamerican, and Crossroads) argue that they are indispensable parties to Guichard's suit against Alpine, and that since they were not parties to that suit, the judgment recognizing Guichard's privilege on their property can have no effect against them. Under Louisiana Code of Civil Procedure article 641, indispensable parties to an action are those whose interest in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication cannot be made unless they are joined. There can be no adjudication unless all indispensable parties are joined. La.Code Civ.P. art. 641. Failure to join indispensable parties may be raised by the peremptory exception or may be noticed by the trial or appellate court on its own motion. La.Code Civ.P. art. 645.
In determining who are indispensable parties, a court must look not only at the interests of the non-party, but also at the interests of the claimant in being able to obtain an "equitable adjudication" as well as judicial efficiency. Kelly Mangham, Comment, Compulsory Joinder: The Real Thing Down in Louisiana, 42 La.L.Rev. 141, 153-59 (1981). While the owners of the lease and equipment have a significant interest in preventing their property from becoming encumbered with a lien, it must be remembered that lease owners who engage in drilling, and equipment owners who bring their equipment onto the lease must be held to full knowledge that if a laborer or furnisher of materials is not paid, the Oil Well Lien Act creates a lien against their interests in favor of that laborer or materialman. To hold that everyone who has an ownership interest that may be subject to a lien under the Oil Well Lien Act is an indispensable party would completely undermine the purposes of the Act. Unless the lien claimant could determine all the lease owners and all the equipment owners and be able to serve them and obtain jurisdiction over them, the lien claimant would be unable to obtain an adjudication to recognize and enforce its lien since "[n]o adjudication of an action can be made unless all indispensable parties are joined therein." La.Code Civ.P. art. 641. Such a result would undermine the clear purpose of the Oil Well Lien Act to protect subcontractors and is not supported by any language in the Act.
The burden on the lien claimant to determine all who own interests in property subject to the lien would be inestimable. If a single lease has been divided and assigned to different entities (as is often done), the search for those with an interest in the lease would require far more than an initial search of the conveyance records in the name of the owner of the property on which the lease was *1315 granted. The lien claimant would have to trace in turn the conveyance records in relation to each subsequent assignee. A search of the conveyance records for the mineral interests on a single piece of property could resemble that of a rather large tree with several limbs and innumerable branches. Thus, the process of merely identifying those who might have an interest in a mineral lease could itself be extremely cumbersome. Cf. Davis Oil Co. v. Mills, 873 F.2d 774 (5th Cir.1989). Furthermore, the task of tracking down those with an ownership interest in the equipment subject to the lien would be daunting at best, and in all probability, next to impossible, especially considering the lien follows equipment if it is moved off of the lease. La.R.S. 9:4861.2. In cases of relatively small lien amounts, the costs of tracking down everyone with an interest subject to the lien would be prohibitive.
In addition, the legislature could have specifically set out who must be sued in order to enforce a lien under the Oil Well Lien Act, but chose not to do so. In the Private Works Act, which creates a privilege for laborers and materialmen, among others, against an immovable in relation to construction projects on that immovable, which is similar to the lien created under the Oil Well Lien Act, the legislature specifically provided that the privilege is extinguished if: "The claimant or holder of the privilege does not institute an action against the owner for the enforcement of the claim or privilege within one year after the expiration of the time given by La.R.S. 9:4822 for filing the statement of claim or privilege to preserve it...." (emphasis added). La.R.S. 9:4823(A)(2). Thus, the legislature has demonstrated that when it intends that specific persons must be named in a suit to enforce a particular privilege it clearly designates who should be so named. In the Oil Well Lien Act, however, the legislature made no reference whatsoever as to against whom an action must be instituted. La.R.S. 9:4865.
Finally, the privilege granted by La.R.S. 9:4861 does not apply against the lease owners or equipment owners themselves, but rather applies only against the property subject to the privilege. It is well settled that the privilege created by La.R.S. 9:4861 is strictly in rem, against the property (lease or equipment) only, and no personal liability is created by the privilege on the part of the owners of property subject to the privilege. Sargent v. Freeman, supra; Genina Marine Services, Inc. v. Arco Oil & Gas Co., 552 So.2d 1005 (La.App. 1st Cir. 1989); Lor, Inc., 489 So.2d at 1331; Boudreaux, supra; JHJ Ltd. I v. Chevron U.S.A., Inc., 617 F.Supp. at 729, 733; Martin & Yeates, supra, at 847; Harrell, supra, at 103; Cabes, supra at 16. Under the wording of the Oil Well Lien Act, the lien attaches to the whole of the described property, La.R.S. 9:4861, and is preserved as to the whole by filing a proper recordation of notice and an action thereon. La.R.S. 9:4865. Therefore, in our view, under the scheme set up in the Oil Well Lien Act, a judgment recognizing a claimant's lien on the subject property has effect against the whole of the property subject to the lien, even though every person with an interest in property subject to the lien has not been named as a party.
For the foregoing reasons, we conclude that everyone who has an ownership interest in property subject to the lien granted by the Oil Well Lien Act is not an indispensable party to an action on that lien, and need not be named a party to the suit in order to have the lien recognized against the whole of the property.

IV.
Appellees next argue that to allow the Plaquemines Parish judgment recognizing Guichard's lien against their interests in the proceeds of the lease to have effect against their interests violates their rights to due process under the United States and Louisiana Constitutions. They contend that because they were not a party to that suit, their property is being taken without the opportunity of a hearing. We disagree.
As already indicated, the privilege created by the Oil Well Lien Act is purely in rem, *1316 and creates no personal obligations whatsoever. Also, it must be noted that Transamerican, Toce, and Crossroads engaged in the drilling of the well voluntarily and contracted with Alpine for the drilling of the well. They took these actions being held to full knowledge of the provisions of the Oil Well Lien Act which creates a lien on their interests in the event the laborers or furnishers of materials were not paid.
The minimum due process requirements for an action which will deprive a person of his or her interest in property were set out in Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in which the United States Supreme Court held:
[P]rior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."
462 U.S. at 795, 103 S.Ct. at 2709, citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
The Court went on to state that:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.
462 U.S. at 800, 103 S.Ct. at 2712.
In the present case, as previously noted, Toce Oil Company was the record owner of the Wilbert lease at the time Guichard filed its lien affidavit and when the suit on the lien was filed in Plaquemines Parish. Thus, Toce had a constitutionally protected property interest in the lease which was affected by Guichard's filing of suit. As such, Toce was entitled under Mennonite and Mullane to notice reasonably calculated to apprise it of the pendency of the action and to afford it an opportunity to present its objections.[7]
In this case, Toce, as well as Transamerican, did in fact receive, through certified mail from Guichard, copies of the lien affidavit and notice of the suit filed in Plaquemines Parish to have the lien recognized.[8] Thus, Toce was given actual notice of the pendency of Guichard's suit on the lien that would affect its interest in the subject lease. Toce had ample opportunity to intervene in *1317 the Plaquemines Parish suit to protect its interests and to assert any potential deficiencies in the lien affidavit or any other defenses that it may have had. See La.Code Civ.P. art. 1091. Nonetheless, upon receiving notice of Guichard's suit seeking recognition of a lien on Toce's lease, Toce chose to take no action.[9] Toce cannot now be heard to say that it was denied an opportunity for a hearing.[10] In our view, the minimum requirements of constitutional due process were met by Guichard's actual notice to Toce of the pending action asserting a lien on Toce's property interest.

V.
Appellees next argue that La. R.S. 9:4865 is peremptive, that peremption cannot be interrupted, and therefore, since Guichard's suit filed in Orleans Parish to garnish the proceeds of the well was not filed within a year of recordation of the lien, the lien is extinguished.[11] We need not, however, decide whether La.R.S. 9:4865 is peremptive or prescriptive. Contrary to Appellees' assertions and the court of appeal's conclusion, interruption is not at issue here. The court of appeal reasoned that since Guichard's suit against Alpine in Plaquemines Parish could have no effect against the interests of Transamerican, Toce and Crossroads because they were not made parties to that suit, to allow the Orleans Parish suit to have effect against their property interests would, in essence, allow interruption of peremption. Therefore, the court of appeal held that *1318 Guichard's lien rights were perempted. However, we have held that Guichard's suit against Alpine in Plaquemines Parish did have effect against the whole of the property subject to the lien. Thus, the basis of the court of appeal's reasoning was incorrect.
The legislature has set forth in La. R.S. 9:4865 what is required to prevent the privilege from being extinguished: 1) recordation of the lien pursuant to La.R.S. 9:4862, and 2) filing an action on the lien within a year of recordation. Even if La.R.S. 9:4865 is peremptive, performance of the required act or acts in the specified time prevents the running of peremption. See Flowers, Inc. v. Rausch, 364 So.2d 928, 930 (La.1978) (quoting Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953)); James F. Shuey, Comment, Legal Rights and the Passage of Time, 41 La.L.Rev. 220, 241 (1980).
Guichard performed the acts required by La.R.S. 9:4865. It properly recorded its lien pursuant to La.R.S. 9:4862. It then instituted an action seeking a judgment against Alpine for the debt owed and a judgment recognizing its lien on the subject property. Since the lien is created to protect the laborer or furnisher of materials from the burden of not being paid, it follows that a suit by that laborer or materialman against the debtor for the debt and for a judgment recognizing its lien created by the Oil Well Lien Act constitutes an action on the lien. As explained earlier, the judgment recognizing Guichard's lien had full force and effect against the whole of the property claimed in the lien. Being an action on the lien effective against the whole of the property, it served to preserve the lien as to the whole of the property, whether the time periods set out in La.R.S. 9:4865 are prescriptive or peremptive.
Guichard merely sought to enforce the Plaquemines Parish judgment by making it executory in Orleans Parish in order to garnish funds subject to the lien. La.Code Civ.P. arts. 2416-17, 2781-83. Louisiana Code of Civil Procedure articles 2416 and 2417[12] require that a judgment be made executory in a garnishment proceeding under a writ of fieri facias when the garnishee is domiciled in a parish other than the one in which the judgment was rendered. See also La.Code Civ.P. art. 2781, comment (b); American Agency Underwriters, Inc. v. Roger Williams Ins. Co., 421 So.2d 383 (La.App. 1st Cir.1982). In our view, this is not "interruption", but rather, is merely Guichard's enforcement of its valid Plaquemines Parish judgment recognizing its lien.

VI.
Transamerican contends that it filed for bankruptcy, that its Reorganization Plan was approved by the bankruptcy court on April 6, 1992, and that this discharged all debts not resolved in the Plan and barred creditors who did not file their claims in bankruptcy court from bringing actions against Transamerican or its property. Transamerican goes on to argue that Guichard's attempts to enforce its lien against Transamerican's property violated the automatic stay in bankruptcy. On the other hand, Guichard argues that it did not violate the automatic stay in bankruptcy as there was no bankruptcy proceeding at the time the funds were garnished. Guichard alleged that it received the last garnishment proceeds in April, 1991, but that Transamerican did not file for bankruptcy until May 1, 1991. Guichard further argues that even if its claims against Transamerican were discharged in bankruptcy, its claims against *1319 Toce and Crossroads remain since only Transamerican filed for bankruptcy.
The district court failed to rule on Transamerican's arguments regarding the stay in bankruptcy. Because of the court of appeal's disposition of the case, it too did not rule on this issue. Because neither of the lower courts have ruled on this issue, and because it appears that there are factual issues in relation to the resolution of this issue, we remand the case to the district court and order it to rule on Transamerican's claim.

VII.
Finally, Appellees argue that Guichard's seizure was overbroad and that its notice of lien was invalid because it did not adequately describe the lease. We disagree with the contention that the notice of lien did not adequately describe the lease. Louisiana Revised Statutes 9:4862(C) provides: "The notice of such claim or privilege shall contain a description of the leased property of such nature as to make the leased property reasonably subject to identification." The notice of lien filed by Guichard stated that they had conducted operations "for and in connection with the drilling, exploration, production and operation of the hereinafter described oil or gas well(s) situated upon the following described property or leases for the amounts shown, to-wit: Transamerican Energy and Toce Oil Company Wilbert Co. Lake Mongoulois Unit Well No. 1, Section 15, Township 10 South, Range 9 East, St. Martin Parish, Louisiana."
We note that Appellees do not contend that this description is incorrect, but merely that it fails to describe the lease itself. We find no merit in this argument and hold that Guichard's description of the leased property was "of such a nature as to make the leased property reasonably subject to identification." La.R.S. 9:4862(C). See Mercantile Nat'l Bank, supra; Dooley Tackaberry, Inc. v. Freeport McMoran Oil & Gas Co., 802 F.Supp. 1438 (E.D.La.1992) (holding valid, under La.R.S. 9:4862(C), a lien affidavit for supplies given for employee's building "attached to and located on the FREEPORT-McMORAN OIL AND GAS COMPANY West Delta 89 production platform.").
However, the claim that Guichard's seizure was overbroad raises issues of material fact and summary judgment should not have been granted. Appellees allege that only 18.65 percent of the production from Wilbert No. 1 Well is attributable to the subject lease, and that the other 81.35 percent of production is attributable to other leases in the Lake Mongoulois unit, for which the Wilbert No. 1 Well is the unit well. They argue that Guichard seized all the production from Wilbert No. 1, rather than merely the production attributable to the subject lease. The district court made no factual findings in relation to these assertions and granted Guichard's motion for summary judgment. We hold that there are genuine issue of material fact, reverse the district court's granting of summary judgment, and remand the case to the district court so that such factual findings may be made in order to determine whether Guichard has seized proceeds to which it is not entitled.

DECREE
Accordingly, the judgment of the court of appeal dismissing Guichard's suit against Transamerican, Toce and Crossroads is reversed. The district court's granting of summary judgment is also reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DENNIS, J., dissents with reasons to be assigned.
NORRIS, J., dissents by KIMBALL, J.
LEMMON, J., dissents and will assign reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. While it may be true that a lienor does not have to join all of *1320 the owners of the property in a suit to enforce the statutory lien on the property, Guichard's suit filed solely against the contractor in charge of the well for the amount allegedly unpaid by the contractor is insufficient to satisfy the Act's requirement of instituting an action on the lien.
La.Rev.Stat. 9:4861(A) grants a privilege or lien to persons who perform labor or services in drilling oil, gas, or water wells on oil and gas proceeds from the well, proceeds inuring to the working interest therein, the well and lease, and drilling rigs, pipelines and related equipment for the amount due for labor or service, interest, costs and attorney's fees.
La.Rev.Stat. 9:4861(B) grants a similar privilege to any person who provides materials, supplies, equipment, machinery, rigs, fuel, repairs, trucking, or towing in connection with the drilling of any such wells.
La.Rev.Stat. 9:4865(2) provides that the privilege granted shall be extinguished if the claimant or holder of the privilege does not institute an action thereon within one year after the date of recordation of notice of the privilege.
Because a privilege or a lien is a claim, encumbrance, or charge on property for payment of a debt, obligation, or duty, it is evident that an action to enforce a privilege or lien must be brought against the owner of the property interest affected by the lien or privilege. The majority's interpretation of the statute would render the law unconstitutional for lack of due process whenever applied to prejudice the rights of a reasonably ascertainable owner without actual notice. Therefore, as Guichard did not file suit against an owner of the property interest within the one year period mandated by La. Rev.Stat. 9:4865(2), the privilege that was granted was extinguished.
As the majority points out, the Public Works Act creates a lien in favor of laborers and materialmen that is very similar to the lien in question. It further explains that the Public Works Act lien is extinguished if the claimant does not institute an action against the owner for the enforcement of the lien. The majority interprets the inclusion of the owner as the person to sue as evidence that if the legislature intended to force the lienor to name the owner it would have so specified. I believe it would be more reasonable to reason by analogy from the article and discover that one must name the owner of the property to have a valid "action on the lien."
Moreover, the very reasoning used by the majority supports this conclusion. The majority acknowledges the necessity for an owner to have actual notice if its name and address are reasonably ascertainable in order to satisfy minimum due process rights and to constitutionally deprive the owner of his or her interest in the property. While this may be consistent with the majority's reasoning that the legislature could not have intended for the lienors to track down all multiple owners because it would be too difficult, it is inconsistent with the majority's holding that the lienor does not have to join any of the owners when, like in this case, the principal owner's identity was reasonably ascertainable. It seems that it would be just as easy for lienors to file suits against reasonably ascertainable owners as it would to track them down for the purpose of giving notice. In addition, this impliedly recognizes that to have a valid action on the lien, i.e. one that serves to deprive the owner of his rights in the property, the lienor must join at least some of the owners of the property.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr.

Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Guichard has since changed its name to Bayou Drilling Company.
[2] In addition to paying Alpine for its services, Transamerican agreed to assign to Alpine a 12.5% working interest in the well if it proved productive. The parties dispute whether the assignment was ever made. However, whether or not the assignment was made is not pertinent to our holding.
[3] Although Toce had previously assigned interests in the lease to Transamerican and Crossroads, those assignments were not recorded in the public records until March 14, 1990.
[4] Writ No. 91-C-0008 decided on October 1, 1991.
[5] The Fourth Circuit noted that Toce Oil Company was actually the only indispensable party because Toce was the sole record owner of the lease at the time the lien was filed. Toce's subsequent assignments to Transamerican and Crossroad could have no effect on Guichard's lien as the assignments were recorded subsequent to Guichard's filing of the lien affidavit.
[6] With respect to others who have a privilege under the Oil Well Lien Act, Louisiana Revised Statutes 9:4862(A)(1) provides that the notice of the privilege must be filed for record and inscribed in the mortgage records of the parish where the property is located:

. . . . .
(b) Within one hundred eight days after the last day of the doing, making, or performing of such trucking, towing, barging, or repairing, in the case of claimants doing, making, or performing such services; and
(c) In the case of furnishers of fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, within one hundred eighty days from the last date of the delivery of such fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies to the well or wells.
[7] The assignments from Toce to Transamerican and Crossroads were made subject to Guichard's lien, as the assignments were not recorded in the public records until after Guichard filed its lien affidavit and suit thereon. Additionally, Guichard filed a notice of lis pendens prior to recordation of the assignments. Thus, Transamerican and Crossroads took their interest in the lease subject to the lien and were not denied procedural due process. Transworld Drilling Co. v. Texas Gen. Petroleum Corp., 480 So.2d 323 (La.App. 4th Cir.), writ denied 481 So.2d 134 (La.1985).
[8] Guichard's attorney, Dennis J. Vidrine, sent the following certified letter to Toce dated October 17, 1989:

I represent Guichard Drilling Company, whose mailing address is Post Office Box 2000, Crowley, LA XXXXX-XXXX, who has a claim in the sum of $112,060.06 against Alpine Energy Services, Inc. of 1900 N. Loop, Suite 225, Houston, TX 77018, relative to your Transamerican Energy and Toce Oil Company Wilbert Co. Lake Mongoulois Unit Well No. 1, situated in Section 15, Township 10 South, Range 9 East, St. Martin Parish, Louisiana.
You will find enclosed a certified copy of a lien affidavit filed in St. Martin Parish, Louisiana, perfecting my client's lien against the above mentioned well prusuant [sic] to La. R.S. 9:4861 et seq. You will also find enclosed a Notice of Suit to Enforce Lien.
This notice is furnished to you as a working interest owner in the above described well. The claims of Guichard Drilling Company may affect your interest in said well and the lease upon which it is situated.
(emphasis added). The Notice of Suit to Enforce Lien, which was enclosed, provided:
BE IT KNOWN that on this 13th day of October, 1989, before me, a Notary Public in and for the State and Parish aforesaid, personally came and appeared:
DENNIS J. VIDRINE, a resident of and domiciled in Lafayette Parish, Louisiana, whose mailing address is: 402 West Convent Street, Lafayette, Louisiana 70501,
who, after being by me first duly sworn did depose and say:
That this affidavit is made for the purpose of preserving and maintaining a lien on the hereindescribed oil, gas and/or water well property and notice is given herewith as follows, to-wit:
1. Suit was filed in the 25th Judicial District Court in and for Plaquemines Parish, Louisiana, said suit being entitled, "Guichard Drilling Company vs. Alpine Energy Services, Inc."; in this suit petitioner seeks to have its lien granted by La.R.S. 9:4861, et seq. recognized and maintained, said lien being described and recorded as follows:
1. That certain oil or gas lien dated the 10th day of October, 1989, recorded October 11th, 1989, in Mortgage Book 495, page 229, under Entry No. 131364, St. Martin Parish, Louisiana, in the principal sum of $112,060.06, plus interest, attorney's fees and costs.
2. The foregoing lien affects the following described real property or oil and gas interest: Transamerican Energy and Toce Oil Company Wilbert Co. Lake Mongoulois Unit Well No. 1, Section 15, Township 10 South, Range 9 East, St. Martin Parish, Louisiana, all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines, flow lines, gathering lines, and other related equipment included [sic], but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment, buildings, tanks and other structures thereunto attached or located on the lease.
3. Transamerican Energy, 5757 Alpha Road, Suite 309, Dallas, TX 75240 and Toce Oil Company, 969 Coolidge, Lafayette, LA 70503, are the owners of the aforedescribed lease and/or working interests in the wells and the property described above.
The lien affidavit, which provided similar information as the Notice of Suit to Enforce Lien, was also enclosed.
[9] Throughout the history of the Act, the customary practice has been for those not named in a lien claimant's suit to intervene in the proceeding in order to protect their interests from the claims of the lien claimant. See e.g. Sargent v. Freeman, supra; J.S. Abercrombie Co. v. Lehulu Oil Co., 181 La. 644, 160 So. 126 (1935); Campbell v. Aggers, 177 La. 113, 147 So. 912 (1933); Ogden Oil Co., Inc. v. Venture Oil Corp., supra; Transworld Drilling Co. v. Texas Gen. Petroleum Corp., supra; Sutton-Zwoile Oil Co. v. Barr Petroleum Corp., supra; Odom v. McClanahan, supra; Anderson v. Legrande, 140 So. 269 (La.App. 2d Cir.1932); Lord v. David, 140 So. 268 (La.App. 2d Cir.1932); Creech v. David, 140 So. 265 (La. App. 2d Cir.1932).
[10] We note that in the Orleans Parish proceeding filed by Guichard to make its judgment recognizing its lien executory and to garnish certain proceeds of the lease held by Texaco, in which Toce was made a party defendant, the trial court rendered judgment recognizing Guichard's lien on the subject property.
[11] Toce also argues that Plaquemines Parish was not a proper venue for Guichard's suit for recognition of its lien and therefore cannot serve to prevent the running of peremption. However, no objection to the venue of the Plaquemines Parish proceeding was made therein and that judgment is final and its venue cannot now be challenged. However, though not so ruling, the venue of the Plaquemines Parish judgment appears to be proper under La.Code Civ.P. arts. 72, 45 and 42.
[12] Article 2416 provides:

The venue of a garnishment proceeding under a writ of fieri facias is the parish where the garnishee may be sued under Article 42 only or Article 77.
. . . .
Article 2417 provides:
The procedure in garnishment proceedings under the writ of fieri facias in a court other than that which rendered the judgment shall be the same as if the garnishment were in the court where the judgment was rendered, except:
(1) The judgment must be made executory in the court where the garnishment proceedings are filed, as provided in Article 2782; and
. . . .