GUIDRY, J.
A contractor that provided equipment and supplies to a lessee for work on a well that was ultimately found to be a dry hole, appeals a declaratory judgment finding that an oil well lien perfected by the contractor is "of no legal effect" as to a mineral servitude holder and a second well located in the same field as the well for which the services, equipment, and supplies supporting *104 the lien were provided. For the following reasons, we reverse.
FACTS AND PROCEDURAL HISTORY
Through a series of transactions, Marlborough Oil & Gas, LLC acquired ownership of a mineral servitude, and pursuant to its ownership, it executed an oil and gas lease on July 8, 2010, of the following described property (hereinafter referred to as the "leased property"):
Commence at a point which is common to the southwest corner of Section 28, and the southeast corner of Section 29, Township 8 South, Range 11 East, thence run east along the south line of Section 28 to a point on the line which separates the east half from the west half of said Section 28; thence in a northerly direction along said line to a point sufficiently distant from the south line of said Section 28 so that a line drawn from such point parallel to the south line of Section 28 and extending westerly to the boundary line between the Parishes of West Baton Rouge and Iberville, and along such parish line back to the point of beginning, which will embrace two hundred (200) acres; being the same property included in a lease from the Morley Cypress Company, to the Gulf Refining Company of record in Book 22, folio 364 of the Conveyance records of the Parish of West Baton Rouge.
Included within the parameters of the leased property are two wells, the Marlborough Oil & Gas, LLC No. 1 and the Marlborough Oil & Gas, LLC No. 3.
Baker Hughes Oilfield Operations, Inc., a company that furnishes labor, equipment, machinery, materials, and related services in support of the development, exploration, maintenance, and operation, provided goods, equipment, supplies, materials, and related services to Northwind Oil & Gas, Inc., from September 17, 2012 to October 8, 2012, in connection with Northwind's operations[1] on the Marlborough Oil & Gas, LLC No. 3 well. Northwind, however, failed to pay the $412,415.64 owed for the goods and services provided by Baker Hughes. As a consequence, on March 14, 2013, Baker Hughes recorded an "Oil Well Lien Affidavit, Notice of Claim of Lien and Statement of Privilege," in the mortgage records of West Baton Rouge Parish, wherein it described Marlborough Oil & Gas, LLC No. 3 well and claimed a privilege for the $412,415.64 owed, plus interest, attorney fees, and costs, pursuant to the Louisiana Oil Well Lien Act (LOWLA), La. R.S. 9:4861 -4873. Baker Hughes also filed suit against Northwind and recorded a notice of lis pendens regarding the suit in the mortgage records of West Baton Rouge Parish on April 10, 2013. Finally, Baker Hughes secured a summary judgment against Northwind on November 14, 2013, wherein Baker Hughes was awarded the sum of $412,415.54, plus interest, costs, and attorney fees. The judgment further "recognized and foreclosed" Baker Hughes' lien and privilege in the amount of $412,415.54 against the Marlborough Oil & Gas, LLC No. 3 well "as provided in" the LOWLA.
On March 20, 2017, Marlborough filed a petition for declaratory judgment against *105 Baker Hughes,[2] seeking to have the court declare that the March 14, 2013 oil well lien and the November 14, 2013 summary judgment obtained by Baker Hughes did not affect or encumber Marlborough's mineral servitude or any "tubing, casing, equipment, pipelines, or other constructions" situated on the leased property. In response to the petition, Baker Hughes denied Marlborough's allegations that the lien and judgment should be deemed ineffective in any respect.[3] Thereafter, Marlborough filed a pleading titled "Motion for Summary Judgment, or Alternatively for Partial Summary Judgment."
In its memorandum in support of its motion, Marlborough prayed that (1) Baker Hughes' oil well lien against the Marlborough Oil & Gas, LLC No. 3 well be declared invalid as to the Marlborough Oil & Gas, LLC No. 1 well; and (2) Baker Hughes' oil well lien be declared "wholly ineffective" as to Marlborough, its successors, assigns and lessees, because it did not receive a Mennonite [4] notice of Baker Hughes' suit to confirm its oil well lien. In a reply memorandum in further support of its motion, Marlborough alternatively prayed for partial summary judgment declaring that the Baker Hughes' oil well lien did not attach to the casing and tubing that is "downhole" in the Marlborough Oil & Gas, LLC No. 1 well, as such items should be considered component parts of the land because they cannot be easily removed.
Following a hearing on Marlborough's motion for summary judgment, and alternative motion for partial summary judgment, the trial court signed a judgment on August 29, 2017, in favor of Marlborough, declaring Baker Hughes' oil well lien, the notice of lis pendens, and the November 14, 2013 summary judgment in favor of Baker Hughes "of no legal effect or consequence, insofar and only insofar as to (1) [Marlborough], its successors, lessees and assigns and (2) the mineral servitude owned by [Marlborough]" affecting the leased property as described in the judgment. The judgment further declared Baker Hughes' oil well lien, the notice of lis pendens, and the November 14, 2013 summary judgment in favor of Baker Hughes "of no legal effect or consequence insofar and only insofar as the Marlborough No. 1 Well." Following the denial of its motion for new trial, Baker Hughes was granted a devolutive appeal of the August 29, 2017 judgment.[5]
*106 ASSIGNMENTS OF ERROR
On appeal, Baker Hughes assigns the following as error committed by the trial court:
I. The [trial court] erred in granting summary judgment when the opposing summary judgment evidence established that the description provided in the Oil Well Lien satisfies LOWLA;
II. The [trial court] erred in granting summary judgment on the issue of proper description under LOWLA;
III. The [trial court] erred in granting summary judgment on the issue of Mennonite notice;
IV. The [trial court] erred in rendering a decision on summary judgment that was based in large part upon an improperly brought constitutional challenge on LOWLA notice, including failure to properly raise the issue and failure to notify the Attorney General and provide that office an opportunity to be heard.
DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Bice v. Home DepotU.S.A., Inc., 16-0447, p. 3 (La. App. 1st Cir. 12/22/16), 210 So.3d 315, 318. A motion for summary judgment is properly granted if the motion, memorandum, and supporting documents, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
In its first two assignments of error, Baker Hughes contends that the trial court erred in granting summary judgment when the record shows that it fully complied with the LOWLA in securing the lien and judgment at issue. We agree. The record shows that Baker Hughes timely filed (within 180 days of October 8, 2012, the date of the last activity giving rise to the privilege) a statement of privilege in accordance with La. R.S. 9:4865(A) and 4868 in the mortgage records of West Baton Rouge Parish on March 14, 2013, and timely filed (within one year of the filing of the statement of privilege) an action against Northwind for the debt owed and for judicial recognition of its privilege in accordance with La. R.S. 9:4865(B) on April 10, 2013. And while the trial court found Baker Hughes' description in the statement of privilege to be deficient, this finding is clearly contrary to the LOWLA.
Louisiana Revised Statutes 9:4868(A)(5) specifies that the statement of privilege must contain "[a] description of the operating interest[6 ] upon which the privilege is claimed, or of the well with respect to which the operations giving rise to the claimant's privilege were performed. " (Emphasis added.) Although Marlborough cites several cases that provide more detailed property descriptions than just naming the well with respect the operations giving rise to the privilege, all of the cited cases pre-date the legislature's *107 amendment and re-enactment of the LOWLA in 1995. See 1995 La. Acts, No. 962, § 1 (which added the provisions of La. R S. 9:4868 cited above). Moreover, La. R.S. 9:4868(E) expressly states that "[a] statement of privilege is not invalid if it fails to contain all of the information required by Subsection A of this Section, but fairly apprises the recipient or person against whom the privilege is asserted of the privilege claimed and of the operating interest, hydrocarbons, or other property upon which the privilege is claimed." Paragraph (B)(1) of La. R.S. 9:4868 states "[a] well is adequately identified if the statement of privilege gives the name and serial or other identification number of the well and the name of the field where it is located as these are designated by the records of the commissioner of conservation." Hence, Baker Hughes's identification of the "Marlborough Oil & Gas # 3 Well, Serial # 245148, API # 17121202230000, Bayou Choctaw Field, West Baton Rouge Parish, State of Louisiana" fully complied with the statutory requirements for preservation of its privilege.
Additionally, it has been uniformly held that the privilege granted is not restricted to the proceeds of the well actually drilled, but rather exists on the entire lease as a whole. Guichard Drilling Company v. Alpine Energy Services, Inc., 94-1275, pp. 5-6 (La. 7/3/95), 657 So.2d 1307, 1312. Consistent with this holding, La. R.S. 9:4863(A)(1) states that the privilege provided for in La. R.S. 9:4862 is established over:
The operating interest under which the operations giving rise to the claimant's privilege are conducted together with the interest of the lessee of such interest in a:
(a) Well, building, tank, leasehold pipeline, and other construction or facility on the well site.
(b) Movable on a well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use.
(c) Tract of land, servitude, and lease described in R.S. 9:4861(12)(c) covering the well site of the operating interest.
Thus, no authority exists, as a matter of law, for the trial court's decree holding Baker Hughes' lien and judgment only effective as to the Marlborough Oil & Gas, LLC No. 3 well and not effective as to the Marlborough Oil & Gas, LLC No. 1 well, Marlborough's mineral servitude as connected with the leased property, or Marlborough, its successors, lessees, and assigns.
Nevertheless, Marlborough argues that the summary judgment finding Baker Hughes' lien and judgment ineffective, in part, is proper because the operating interest giving rise to Baker Hughes' lien and judgment is expired. The July 8, 2010 lease provides several different terms - a "Primary Term," a "Non-Productive Term," and a "Productive Term." The "Primary Term" is described as being "for a term of one year from the effective date [of the lease, July 8, 2010] and for so long thereafter as oil or gas is being produced in paying quantities or drilling or reworking operations are being conducted on the Lands[7 ] with reasonable diligence, in accordance with the provisions hereof."
In claiming that the operating interest giving rise to Baker Hughes' lien and judgment is expired, Marlborough more particularly relies on the "Productive Term" provision of the July 8, 2010 lease.
*108 The "Productive Term" is identified in the lease as "[t]he term ... following the discovery and production of oil or gas in paying quantities." The span of the Productive Term is based on production within a "Producing Block," relative to which the lease provides:
In the event the Louisiana Commissioner of Conservation (or any other regulatory body claiming or having jurisdiction) shall by order fix or establish a drilling or producing unit for or applicable to the Lands, such unit, as of the date of first production in paying quantities from the unit well subsequent to the date of issuance of the order creating such unit, ... shall be deemed, for all purposes of this Lease, to be a Producing Block. Likewise, should any of the leased Lands be included in a unit established by the Louisiana Commissioner of Conservation, the unit well which is not on the leased Lands, the portion of the leased Lands included in said unit shall be deemed, to be a Producing Block as of the date of first production in paying quantities from the unit well subsequent to the date of issuance of the order creating such unit.
The lease further provides that it shall terminate, as to the acreage in the Producing Block, "in the event that production in paying quantities from a Producing Block should cease for any cause" for a period of 90 days and "shall terminate for acreage outside a Producing Block in the event that production in paying quantities should cease from all wells not within a Producing Block" for a period of 90 days. The lease thereafter refers to possible actions a lessee could take, within 90 days of the cessation of production, to prevent termination of the lease.
Marlborough asserts that Baker Hughes offered no evidence to refute the proof that it offered that the Marlborough Oil & Gas, LLC No. 1 and No. 3 wells were no longer producing -- that evidence being the affidavit of Steven T. Burke, a certified, professional "landman"[8] with 42 years of experience in the oil and gas exploration industry. In his affidavit, Mr. Burke, with reference to copies of records from the Office of Conservation, states that the Marlborough Oil & Gas, LLC No. 1 well ceased production in January 2016, and the Marlborough Oil & Gas, LLC No. 3 well was a dry hole. While Mr. Burke's affidavit indicates that no further production was taking place relative to the Marlborough Oil & Gas, LLC No. 1 and No. 3 wells, there is no evidence in the record to indicate that these two wells were the only wells that existed on the 200 acres of land that were subject to the July 8, 2010 lease as to establish that the lease expired under the Productive Term provision.
Without expressing any opinion as to whether the expiration of the lease would, in fact, limit or terminate the effectiveness of Baker Hughes' privilege, we nonetheless find that the express language of the July 8, 2010 lease requires a showing that there was no production by any well within or outside of a Producing Block to establish that the lease is, in fact, expired under the Productive Term provision of the lease. As the movant on the motion for summary judgment and the party raising the contention that the lease is expired, Marlborough bore the burden of establishing such expiration, and failing to do so, we find not only that the burden did not shift to Baker Hughes to disprove Marlborough's assertion, but that genuine *109 issues of material fact exist as to whether the lease is expired.[9]
Further, we are not persuaded by Marlborough's assertion that Baker Hughes' lien and judgment create a cloud on the title of its mineral servitude, preventing it from leasing the property to anyone else to rework the Marlborough Oil & Gas, LLC No. 1 well. As indicated by the Louisiana Supreme Court in Guichard Drilling Company, 94-1275 at p. 18, 657 So.2d at 1319, Baker Hughes can only seize production pursuant to the operating interest/lease under which Northwind operated. Moreover, La. R.S. 9:4863(C) expressly states that the privilege does not affect:
(1) That part of hydrocarbons produced from an operating interest that is owned by a lessor, sublessor, overriding royalty owner, or other person who is not a lessee of the operating interest.
(2) The obligations or proceeds arising from the disposition of such hydrocarbons that are owned by or payable to such persons.
Thus, any new lease negotiated by Marlborough would not be affected by the Baker Hughes' lien and judgment at issue herein.
In its final two assignments of error, Baker Hughes challenges the trial court's finding that the notice of lis pendens that it filed regarding its suit against Northwind, in compliance with La. R.S. 9:4865(C), was insufficient to accord Marlborough due process under Mennonite. Baker Hughes argues that Marlborough's assertion that Baker Hughes' actions in preserving its lien in accordance with the LOWLA violated Marlborough's due process rights was an indirect challenge to the constitutionality of the LOWLA, which challenge could only be made by complying with the requisites of La. C.C.P. art. 1880.[10] See Rapides Parish Police Jury v. Catahoula Duck Club & Lodge L.L.C., 09-64, p. 3 (La. App. 3d Cir. 11/18/09), 24 So.3d 988, 990, writ denied, 09-2778 (La. 2/26/10), 28 So.3d 279.
In the summary judgment appealed, however, the trial court makes no reference to the constitutionality of the LOWLA or any of its provisions; rather, it simply declared Baker Hughes' lien and judgment to be ineffective as to the Marlborough Oil & Gas, LLC No. 1 well, as to Marlborough's mineral servitude, and as to Marlborough, its successors, lessees, and assigns. Moreover, although the trial court's oral reasons for judgment appear to indicate that the notice given Baker Hughes was insufficient to meet constitutional muster, the trial court never expressly stated that the LOWLA or any of its provisions were unconstitutional in the signed judgment, and there is no declaration *110 of unconstitutionality contained anywhere in the judgment appealed.
It is well-settled law that the trial court's oral or written reasons form no part of the judgment, and as appellate courts review judgments, not reasons for judgment, we find the issues raised by Baker Hughes in its final two assignments error are not properly before us for consideration. See La. C.C.P. arts. 1918, 2082, 2083 and Burmaster v. Plaquemines Parish Government, 07-1311, pp. 1-2 (La. 8/31/07), 963 So.2d 378, 379. Accordingly, we decline to address the arguments raised by Baker Hughes relative to its final two assignments of error.
CONCLUSION
While the owners of a lease have a significant interest in preventing their property from becoming encumbered with a lien, it must be remembered that lease owners who engage in drilling must be held to full knowledge that if a laborer or furnisher of materials is not paid, the LOWLA creates a lien against their interests in favor of that laborer or materialman. Guichard Drilling Company, 94-1275 at p. 9, 657 So.2d at 1314. Therefore, pursuant to the foregoing de novo review of the August 29, 2017 summary judgment, we reverse. All costs of this appeal are cast to the appellee, Marlborough Oil & Gas, LLC.
REVERSED.

Louisiana Revised Statutes 9:4861 (4)(a) defines "operations," in pertinent parts, as:
[E]very activity conducted by or for a lessee on a well site for the purpose of:
(i) Drilling, completing, testing, producing, reworking, or abandoning a well.
(ii) Saving, treating, or disposing of hydrocarbons or other substances produced from a well.
(iii) Injecting substances into the earth to produce or enhance the production of hydrocarbons.

At the time the petition was filed, Baker Hughes was known as Baker Hughes Oilfield Operations, Inc.; however, during the course of the litigation, it became known as Baker Hughes, A GE Company, LLC. Marlborough also named T.F. Services, L.L.C. as a defendant in the declaratory judgment action, but it later filed a motion to dismiss T.F. Services, L.L.C., which motion was granted by the trial court in an order signed on May 23, 2017.

While Baker Hughes also included exceptions raising the objection of improper cumulation of actions, prescription, and no cause of action in its answer that do not appear to have been considered or ruled on by the trial court, we observe that Baker Hughes did not include a proposed order requesting that the exceptions be set for hearing, which would explain the lack of further action regarding those exceptions. See La. Dist. Ct. R. 9.8(a) and Chambers v. Acadian Nursing and Rehabilitation Center, 13-1910, pp. 1-2 (La. App. 1st Cir. 9/19/14), 2014 WL 4657309 (unpublished opinion)(wherein the trial court struck the plaintiffs' motion for new trial for failure to comply with Rule 9.8).

See Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Following the lodging of the appeal, this court issued a rule to show cause order, ex proprio motu, questioning the finality of the judgment appealed due to the failure of the judgment to specify whether summary judgment was being granted in full or in part. The order was subsequently referred to this panel to decide. After careful consideration, we observe the judgment appealed grants all of the relief sought by Marlborough in its petition for declaratory judgment. Hence, we find the summary judgment to be a final, appealable judgment. We therefore, recall the rule to show cause order and maintain the appeal.

An "operating interest" is defined in La. R.S. 9:4861 (5)(a) as a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease that gives the lessee, either singly or in association with others, the right to conduct the operations giving rise to the claimant's privilege.

The lease provides that the area of land covered by the lease would be referred to in the lease as the "Lands."

According to Mr. Burke's affidavit, "[a] professional landman works for oil companies putting together tracts of land, mineral leases, rights of way and obtaining other legal instruments for oil wells to get drilled."

If the mover will bear the burden of proof at trial on the issue before the court in the motion, the burden of showing there is no genuine issue of material fact remains with the mover. See La C.C.P. art. 966(D). Only after the mover makes a prima facie showing that the motion should be granted does the burden shift to the non-moving party to present evidence demonstrating a material factual issue remains. Red Star Consultants, LLC v. Ferrara Fire Apparatus, Inc., 17-0847, p. 4 (La. App. 1st Cir. 2/8/18), 242 So.3d 608, 611.
We further note that the trial court never made any express determination as to whether the operating interest/lease under which Northwind performed the operations giving rise Baker Hughes' lien and judgment had expired.

Article 1880 states, in pertinent part, that "[i]f [a] statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."